```
                     DEPARTMENT OF LABOR

              Employment and Training Administration

                           TA-W-94,578

                 MICHIGAN BELL TELEPHONE COMPANY
       A DIRECT WHOLLY-OWNED SUBSIDIARY OF AT&T TELEHOLDINGS, INC.
                      DIGITAL, RETAIL, & CARE
                              UVERSE
                       CUSTOMER LOYALTY GROUP
                          RETENTION CENTER
                         KALAMAZOO, MICHIGAN

                          TA-W-94,578A

                        WISCONSIN BELL, INC.
       A DIRECT WHOLLY-OWNED SUBSIDIARY OF AT&T TELEHOLDINGS, INC.
                      DIGITAL, RETAIL, & CARE
                              UVERSE
                         SALES DEPARTMENT
                        ACQUISITION CENTER
                         APPLETON, WISCONSIN

                          TA-W-94,578B

              INDIANA BELL TELEPHONE COMPANY INCORPORATED
       A DIRECT WHOLLY-OWNED SUBSIDIARY OF AT&T TELEHOLDINGS, INC.
                      DIGITAL, RETAIL, & CARE
                              UVERSE
                         SALES DEPARTMENT
                        ACQUISITION CENTER
                        INDIANAPOLIS, INDIANA

                          TA-W-94,578C

                         AT&T SERVICES, INC.
         A SUBSIDIARY OF AT&T, INC. & AT&T TELEHOLDINGS, INC.
                   AT&T FINANCE BILLING OPERATIONS
                 AT&T GLOBAL BILLING RESOLUTION TEAM
                         SYRACUSE, NEW YORK

                          TA-W-94,578D

                         AT&T SERVICES, INC.
         A SUBSIDIARY OF AT&T, INC. & AT&T TELEHOLDINGS, INC.
                       NETWORK OPERATION CENTER
```

911 NETWORK OPERATIONS CENTER, WHOLESALE SIGNALING NETWORK
OPERATIONS CENTER, AND VOIP2TDM NETWORK OPERATIONS CENTER
MERIDEN, CONNECTICUT

Notice of Negative Determination on Remand

On May 4, 2021, the United States Court of International Trade (USCIT) issued an opinion and order remanding the workers' appeal to the Department of Labor ("the Department") to 1) address workers' evidence and to weigh it against AT&T's evidence in determining whether workers' job losses were caused by a shift in those services to, or an acquisition of those services from, foreign countries, as described in 19 U.S.C. 2272(a)(2); and 2) in regards to "non-certified" evidence provided by AT&T, either find that it "has a reasonable basis for determining that such information is accurate and complete without being certified," and explain the basis for that finding, or else require AT&T to certify its evidence, and 3) if, on remand, Labor finds workers' evidence convincing, the Department must address whether the shift to, or acquisition from, foreign countries "contributed importantly" to workers' job losses as described in 19 U.S.C. 2272(a)(2)(B)(ii). <u>Communications Workers of America Local 4123, on behalf of Former Employees of AT&T Services, Inc.</u> v. <u>United States Secretary of Labor</u> (Court No. 20-00075).

Workers of a firm may be eligible for worker adjustment assistance if they satisfy the criteria of subsection (a), (b) or (e) of Section 222 of the Act, 19 U.S.C. § 2272(a), (b) and (e).

For the Department of Labor to issue a certification for workers under Section 222(a) of the Act, 19 U.S.C. § 2272(a), the following criteria must be met:

(1) The first criterion (set forth in Section 222(a)(1) of the Act, 19 U.S.C. § 2272(a)(1)) requires that a significant number or proportion of the workers in the workers' firm must have become totally or partially separated or be threatened with total or partial separation.

(2) The second criterion (set forth in Section 222(a)(2) of the Act, 19 U.S.C. § 2272(a)(2)) may be satisfied in one of two ways:
   (A) Increased Imports Path:
   (i) sales or production, or both, at the workers' firm must have decreased absolutely; AND
   (ii) (I) imports of articles or services like or directly competitive with articles or services produced or supplied by the workers' firm have increased, OR
   (II)(aa) imports of articles like or directly competitive with articles into which the component part produced by the workers' firm was directly incorporated have increased; OR
   (II)(bb) imports of articles like or directly competitive with articles which are produced directly using the services supplied by the workers' firm have increased; OR
   (III) imports of articles directly incorporating component parts not produced in the U.S. that are like or directly competitive with the article into which the component part produced by the workers' firm was directly incorporated have increased; AND
   (iii) the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm.

   (B) Shift in Production or Supply Path:
   (i)(I) there has been a shift by the workers' firm to a foreign country in the production of articles or supply of services like or directly competitive with those produced/supplied by the workers' firm; OR
   (II) there has been an acquisition from a foreign country by the workers' firm of articles/services that are like or directly competitive with those

>       produced/supplied by the workers' firm; and
> (ii) the shift described in clause (i)(I) or the acquisition of articles or services described in clause (i)(II) contributed importantly to such workers' separation or threat of separation.

For the Department to issue a secondary worker certification under Section 222(b) of the Act, 19 U.S.C. § 2272(b), to workers of a Supplier or a Downstream Producer, the following criteria must be met:

> (1) a significant number or proportion of the workers in the workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated;
> (2) the workers' firm is a Supplier or Downstream Producer to a firm that employed a group of workers who received a certification of eligibility under Section 222(a) of the Act, 19 U.S.C. § 2272(a), and such supply or production is related to the article or service that was the basis for such certification; and
> (3) either
>     (A) the workers' firm is a supplier and the component parts it supplied to the firm described in paragraph (2) accounted for at least 20 percent of the production or sales of the workers' firm;
>     or
>     (B) a loss of business by the workers' firm with the firm described in paragraph (2) contributed importantly to the workers' separation or threat of separation.

Section 222(c) of the Act, 19 U.S.C. § 2272(c), defines the terms "Supplier" and "Downstream Producer."

Workers of a firm may also be considered eligible if they are publicly identified by name by the International Trade Commission as a member of a domestic industry in an investigation resulting in a category of determination that is listed in Section 222(e) of the Act, 19 U.S.C. § 2272(e).

The group eligibility requirements for workers of a firm under Section 222(e) of the Act, 19 U.S.C. § 2272(e), can be satisfied if the following criteria are met:

(1) the workers' firm is publicly identified by name by the International Trade Commission as a member of a domestic industry in an investigation resulting in--
 (A) an affirmative determination of serious injury or threat thereof under section 202(b)(1);
 (B) an affirmative determination of market disruption or threat thereof under section 421(b)(1); or
 (C) an affirmative final determination of material injury or threat thereof under section 705(b)(1)(A) or 735(b)(1)(A) of the Tariff Act of 1930 (19 U.S.C. 1671d(b)(1)(A) and 1673d(b)(1)(A));
(2) the petition is filed during the 1-year period beginning on the date on which--
 (A) a summary of the report submitted to the President by the International Trade Commission under section 202(f)(1) with respect to the affirmative determination described in paragraph (1)(A) is published in the Federal Register under section 202(f)(3); or
 (B) notice of an affirmative determination described in subparagraph (1) is published in the Federal Register; and
(3) the workers have become totally or partially separated from the workers' firm within--
 (A) the 1-year period described in paragraph (2); or
 (B) notwithstanding section 223(b), the 1-year period preceding the 1-year period described in paragraph (2).

During the course of both the initial investigation and the reconsideration investigation, information was collected from the workers' firm and the petitioner.

**<u>Initial Investigation</u>**

On March 4, 2019, a petition for Trade Adjustment Assistance (TAA) was filed by Communications Workers of America (CWA), Local

4123 on behalf of the workers and former workers of Michigan Bell Telephone Company, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Customer Loyalty Group, Retention Center, Kalamazoo, Michigan (TA-W-94,578); Wisconsin Bell, Inc., a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Appleton, Wisconsin (TA-W-94,578A); Indiana Bell Telephone Company Incorporated, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Indianapolis, Indiana (TA-W-94,578B); AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., AT&T Finance Billing Operations, AT&T Global Billing Resolution Team, Syracuse, New York (TA-W-94,578C); and AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., Network Operation Center, 911 Network Operations Center, Wholesale Signaling Network Operations Center, and VOIP2TDM Network Operations Center, Meriden, Connecticut (TA-W-94,578D).

The subject workers were engaged in activities related to the supply of telecommunications services. Specifically, the workers covered under TA-W-94,578, TA-W-94,578A, and TA-W-94,578B provided call center operations support services, the workers covered under TA-W-94,578C provided billing support services, and the workers under TA-W-94,578D provided network operations

center support services. AR1-4, 14-15.

In support of its petition, Communications Workers of America, Local 4123 submitted a copy of the Communications Workers of America's "AT&T 2018 Jobs Report," referenced in each of the petitions, which describes job losses by AT&T call center employees throughout the U.S. and makes general assertions that work is being moved to non-U.S. locations. Closures are reported in various U.S. locations, including Indianapolis, Indiana, Kalamazoo, Michigan, and Appleton, Wisconsin. AR20, 22.

As it relates to the petitioner's allegation (that work was being offshored from the specific five locations at issue), the jobs report provided a narrative that offshoring of call center work was generally occurring within AT&T at large, but did not present evidence that such a shift occurred with respect to any of the five locations at issue in this appeal. The CWA report also reports one instance of a return of call center work to the U.S. from offshore locations. AR14-23.

### *1) Analysis of workers' evidence vs. AT&T's evidence*

Although the AT&T 2018 Jobs Report provided by the CWA, Local 4123 is not explicitly named in the Department's initial investigation determination, its substance (as it relates to TAA group eligibility criteria), including the issue of whether or not work was shifted from any of the AT&T locations under the investigation to any non-U.S. locations, was addressed in the

initial investigation.

The petitioner submitted an additional allegation, AR114, implying that workers in Jamaica were performing the same type of call center work as workers at AT&T's Appleton, Wisconsin, office. The Department investigated this claim and determined, based on additional information provided in writing by AT&T's Assistant Vice President, Senior Legal Counsels, AR-121-128, that workers in Jamaica did not perform the same type of call center work as workers at the Appleton center. The work performed by the Appleton workers remained within the United States.

### 2) *Credibility of AT&T's information*

In its responses to the Business Data Request (BDR) form for each of the five respective locations, AT&T affirmed, under penalty of law, that work at those specific locations was being consolidated into other U.S. centers and not being shifted to a foreign country or acquired from a foreign country. AR53, 63, 73, 92, 106. All BDR responses were provided under a signed affirmation and acknowledgement of the applicable penalties under Federal law for knowingly providing false information. AR57, 67, 76, 98 and 112.

### 3) *Initial Determination*

After addressing all worker group eligibility criteria for TAA certification, the Department issued a negative determination regarding eligibility to apply for worker adjustment assistance,

applicable to workers and former workers of Michigan Bell Telephone Company, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Customer Loyalty Group, Retention Center, Kalamazoo, Michigan (TA-W-94,578); Wisconsin Bell, Inc., a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Appleton, Wisconsin (TA-W-94,578A); Indiana Bell Telephone Company Incorporated, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Indianapolis, Indiana (TA-W-94,578B); AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., AT&T Finance Billing Operations, AT&T Global Billing Resolution Team, Syracuse, New York (TA-W-94,578C); and AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., Network Operation Center, 911 Network Operations Center, Wholesale Signaling Network Operations Center, and VOIP2TDM Network Operations Center, Meriden, Connecticut (TA-W-94,578D), on July 1, 2019. AR154-162 The Department's Notice of Determination was published in the *Federal Register* on August 29, 2019 (84 FR 45531).

**Application for Reconsideration**

By application dated July 25, 2019, the Communications Workers of America, Local 4123 requested administrative reconsideration of the Department's negative determination

regarding eligibility to apply for worker adjustment assistance, applicable to workers and former workers of Michigan Bell Telephone Company, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Customer Loyalty Group, Retention Center, Kalamazoo, Michigan (TA-W-94,578); Wisconsin Bell, Inc., a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Appleton, Wisconsin (TA-W-94,578A); Indiana Bell Telephone Company Incorporated, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Indianapolis, Indiana (TA-W-94,578B); AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., AT&T Finance Billing Operations, AT&T Global Billing Resolution Team, Syracuse, New York (TA-W-94,578C); and AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., Network Operation Center, 911 Network Operations Center, Wholesale Signaling Network Operations Center, and VOIP2TDM Network Operations Center, Meriden, Connecticut (TA-W-94,578D). AR174.

Pursuant to 29 CFR 90.18(c) reconsideration may be granted under the following circumstances: (1) If it appears on the basis of facts not previously considered that the determination complained of was erroneous; (2) If it appears that the determination complained of was based on a mistake in the

determination of facts not previously considered; or (3) If in the opinion of the Certifying Officer, a misinterpretation of facts or of the law justified reconsideration of the decision. The request for reconsideration was granted. The Department's Notice of Affirmative Determination Regarding Application for Reconsideration was issued on August 30, 2019 and published in the *Federal Register* on September 24, 2019 (84 FR 50076). AR175-178.

**Reconsideration Investigation**

During the reconsideration investigation, the Department pursued additional lines of questioning with AT&T pertaining to the applicant's allegation(s) and collected additional information to determine whether 1) any of the work at the five subject locations was shifted to another country or countries or acquired from a foreign country, and 2) the group of workers or any portion of any of such a group meet any of the worker group eligibility criteria for TAA certification. AR202-204, 206-208, 259-261, 267-268, 273-275, 292-293, 305-306, 317-319, 326-327. The additional information collected from AT&T during the reconsideration investigation revealed that the services supplied by the workers were not shifted to a foreign country or acquired from a foreign country. In response to specific questions based upon the petitioner's allegations, AT&T reported that the work at each of the five subject locations remained within the United States. Additionally, the remaining criteria

for certification were not met. AR250-261, 266-267, 272-273, 295-297, 300-303, 307-311, 325, 341-342, 349-350.

On January 21, 2020, the Department issued a negative determination on reconsideration regarding eligibility to apply for TAA applicable to workers and former workers of Michigan Bell Telephone Company, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Customer Loyalty Group, Retention Center, Kalamazoo, Michigan (TA-W-94,578); Wisconsin Bell, Inc., a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Appleton, Wisconsin (TA-W-94,578A); Indiana Bell Telephone Company Incorporated, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Indianapolis, Indiana (TA-W-94,578B); AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., AT&T Finance Billing Operations, AT&T Global Billing Resolution Team, Syracuse, New York (TA-W-94,578C); and AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., Network Operation Center, 911 Network Operations Center, Wholesale Signaling Network Operations Center, and VOIP2TDM Network Operations Center, Meriden, Connecticut (TA-W-94,578D) based on the finding that the worker group eligibility criteria set forth in Section 222 of the Act, 19 U.S.C. § 2272, were not met. AR382-387.

**Remand Determination**

Pursuant to the aforementioned USCIT's Order issued on May 4, 2021, the workers' appeal was remanded to the Department to: 1) evaluate the workers' evidence relative to AT&T's in determining whether workers' job losses were caused by a shift in those services to, or an acquisition of those services from, foreign countries, and 2) address the creditability and reliability of "non-certified" evidence provided by AT&T, and 3) if a shift of work to foreign countries is determined to have occurred, determine whether such shift "contributed importantly" to workers' job losses.

The Department reviewed the Communications Workers of America's "AT&T 2018 Jobs Report" provided during the initial investigation, AR20; additional allegations provided by the petitioner during the reconsideration investigation, AR114; and responses provided by AT&T's Assistant Vice President – Senior Legal Counsels.

Workers' evidence consisted of a report as well as specific allegations regarding work being performed at a Jamaica call center. The Communications Workers of America "AT&T 2018 Jobs Report" submitted by petitioner describes job losses suffered by AT&T employees throughout the U.S. and presents a general assertion that AT&T work has been and continues to be moved to non-U.S. locations. The report also reports the closure of

numerous U.S. call centers in various U.S. locations, including Indiana, Michigan, and Wisconsin, and implies that the firm decisions to route calls to third-party call centers outside the U.S. may lead to reduced call volume for U.S. call centers. The report also describes an AT&T call center opened in Mexico. AR18-25. The petitioner submitted an additional allegation, implying that workers in Jamaica were performing the same type of call center work as workers at AT&T's Appleton, Wisconsin, office. AR114. The general allegations in AT&T's 2018 Jobs Report and the specific allegation about call center work in Jamaica formed the basis of additional investigation questions. AR121-124, 292-293. The general allegations in the AT&T 2018 Jobs Report submitted by petitioner were countered by specific information supplied by AT&T that did not reveal a basis for finding the job report allegations applied to any of the five center investigations. AR121-128, 295-297, 336-337. When asked whether workers in Jamaica perform the same type of work as the Wisconsin workers, AT&T explained that the work was not the same and provided additional information addressing the differences in types of calls handled by the call centers. AR122-124, 336-337.

AT&T's Assistant Vice President, Senior Legal Counsels answered the Department's questions via written responses, and based on the information pertaining to the workers' services provided by AT&T, AR121-128. The general allegations in the jobs

report submitted by petitioner did not include specific evidence or make specific claims that the work of the locations in question moved to or was acquired from a foreign county, and were countered by the specific responses of AT&T's representatives, which did not support a basis for finding a shift of the work of any of the five call centers to another country or the acquisition of such services from another country. AR121-128, 295-297, 336-337. With respect to the allegation that workers in Jamaica were performing the same type of work as the workers at AT&T's Wisconsin call center, the responses provided by AT&T's representatives explained that the work performed in Jamaica was different and not performed under the supervision of Wisconsin managers. AR122-124, 336-337.

The written statements provided to the Department by AT&T's Assistant Vice President, Senior Legal Counsels in the course of the reconsideration investigation about AT&T's own business operations were determined by the Department to be accurate and complete based upon the following: the firm is in the best position to provide accurate, complete, and current information regarding its own operations and business decisions, and the responding officials each had access to the firm's records and to other officials with direct knowledge of the firm's operations and business decisions, including information about the circumstances of worker separations that the petitioner does not have.

Furthermore, at the onset of the investigation process, the firm's responding official is formally notified of the statutory requirement to submit all information requested by the Department for official purposes and in submitting the BDR has affirmed, under penalty of law, knowledge of the statutory requirement and the veracity of the BDR responses provided to the Department. The statutory requirement to provide complete and accurate information subject to penalty of law applies to all responses to the Department's investigations. AR11-13, 26-27, 49-50, 59-60, 90.

Further, AT&T's Assistant Vice President – Senior Legal Counsels were aware of the role they played based upon the Department's notification letters at the beginning of the investigation confirming that only knowledgeable as well as appropriate individuals should address the request for information, *"If you are not the appropriate contact person or if you have any questions, please notify the Department as soon as possible through the TAA Hotline at 888-365-6822;"* and *"If you are not the appropriate company contact for this notice, notify me within two business days. Please also provide the name and contact information for the individual(s) within your organization who can furnish the requested information."* AR12-13, 26-27, 39-40, 49-50, 59-60, 83-84. The letter notification, the completion of the Affirmation of Information section within the Business Data Request forms, and concurrent and subsequent email correspondences

with AT&T's representatives confirmed the accuracy and credibility of the information provided by the employer (AT&T).

Based on the specific information provided by AT&T, and the determination that such information was accurate and complete, the Department concluded that with respect to the five call center locations subject to the investigation, job responsibilities continued to be performed at other U.S. locations and had not been shifted to a foreign country or acquired from a foreign country. AR53, 63, 73, 92, 106, 250-261, 266-267, 272-273, 295-297, 300-303, 307-311, 325, 341-342, 349-350. With respect to Section 222(a)(2)(A)(ii) of the Act, the investigation(s) revealed that imports of call center, billing, or network operations services did not increase during the period relevant to the investigation(s), January 2017 to February 2019. Imports of like or directly competitive services were not reported during the aforementioned period. AR54, 64, 72, 94, 108, 372.

With respect to Section 222(a)(2)(B) of the Act, the investigation(s) revealed that the workers' firm did not shift the supply of call center, billing, or network operations services, or like or directly competitive services, to a foreign country or acquire call center, billing, or network operations services or like or directly competitive services from a foreign country. AT&T officials were required to address allegations that such

work had been shifted to foreign countries, and confirmed that the work performed by workers at the subject locations remained in the United States. The Department is not required to address Section 222(a)(2)(B)(ii) of the Act "contributed importantly" because no shift in services, or acquisition of services, was revealed by the investigation. AR53-54, 63-64, 72-73, 92-94, 106-108, 250-261, 266-267, 272-273, 295-297, 300-303, 307-311, 325, 341-342, 349-350.

With respect to Section 222(b)(2) of the Act, the investigation(s) revealed that AT&T is not a Supplier and does not act as a Downstream Producer to a firm that employed a group of workers who received a certification of eligibility under Section 222(a) of the Act, 19 U.S.C. § 2272(a). AR52, 54, 62, 64, 71-72, 91, 94, 105, 108, 121-128, 151, 325, 341-342, 349-350, 372.

Finally, the group eligibility requirements under Section 222(e) of the Act, are not satisfied since the workers' firm has not been publicly identified by name by the International Trade Commission as a member of a domestic industry in an investigation resulting in an affirmative finding of serious injury, market disruption, or material injury, or threat thereof. AR153.

Conclusion

After careful review of the facts obtained in both the initial investigation and the reconsideration investigation, as shown in the administrative record, I determine that the requirements of

Section 222 of the Act, 19 U.S.C. § 2272, have not been met and affirm the previous notices of negative determination of eligibility of workers of Michigan Bell Telephone Company, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Customer Loyalty Group, Retention Center, Kalamazoo, Michigan (TA-W-94,578) engaged in activities related to the supply of call center operations support services; Wisconsin Bell, Inc., a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Appleton, Wisconsin (TA-W-94,578A) engaged in activities related to the supply of call center operations support services; Indiana Bell Telephone Company Incorporated, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Indianapolis, Indiana (TA-W-94,578B) engaged in activities related to the supply of call center operations support services; AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., AT&T Finance Billing Operations, AT&T Global Billing Resolution Team, Syracuse, New York (TA-W-94,578C) engaged in activities related to the supply of billing support services; and AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., Network Operation Center, 911 Network Operations Center, Wholesale Signaling Network Operations Center, and VOIP2TDM Network Operations Center,

Meriden, Connecticut (TA-W-94,578D) engaged in activities related to the supply of network operations center support services, to apply for adjustment assistance, in accordance with Section 223 of the Act, 19 U.S.C. § 2273.

Signed in Washington, D.C. this 22nd day of July, 2021

                                          HOPE D. KINGLOCK
                                          Certifying Officer, Office of
                                          Trade Adjustment Assistance