# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____ :

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA LOCAL 4123, on behalf of FORMER EMPLOYEES OF AT&T SERVICES, INC., | : : : : : |
| Plaintiffs, | : : |
| v. | : Court No. 20-00075 : |
| U.S. SECRETARY OF LABOR, | : : |
| Defendant. | : : |

_____ :

## PLAINTIFFS' COMMENTS ON THE NEGATIVE DETERMINATION ON REMAND

Bernd G. Janzen
Devin S. Sikes
Tebsy Paul
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel to Plaintiffs*

September 20, 2021

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................i

TABLE OF AUTHORITIES ..........................................................ii

GLOSSARY ............................................................................iv

INTRODUCTION ......................................................................1

BACKGROUND ........................................................................1

    I.    The Court's May 4, 2021 Opinion ....................................1

    II.   Labor's Negative Determination on Remand ........................4

SUMMARY OF THE ARGUMENT ..................................................5

STANDARD OF REVIEW ............................................................6

ARGUMENT ............................................................................8

    I.    Neither Law Nor Fact Supports Labor's Negative
        Determination on Remand............................................8

        A.    Labor Once Again Fails to Provide the Requisite
             Analysis and Explanation..........................................9

        B.    Labor Continues to Erroneously Rely on AT&T's
             Noncertified Statements ..........................................11

        C.    The Remainder of Labor's Remand Analysis
             Cannot Support the Negative Determination on
             Remand ..............................................................16

CONCLUSION ........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. U.S. Sec'y of Agric.*,
469 F. Supp. 2d 1300 (Ct. Int'l Trade 2006)........................................8

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281 (1974)..............................................................................7

*Commc'ns Workers of Am. Local 4123, on behalf of Former
Emps. of AT&T Servs., Inc. v. U.S. Sec'y of Labor*,
518 F. Supp. 3d 1342 (Ct. Int'l Trade 2021).............................. *passim*

*Dep't of Commerce v. New York*,
139 S. Ct. 2551 (2019)........................................................................11

*Encino Motorcars, LLC v. Navarro*,
136 S. Ct. 2117 (2016).............................................................7, 11, 14

*Former Emps. of Barry Callebaut v. Chao*,
357 F.3d 1377 (Fed. Cir. 2004)..........................................................15

*Former Emps. of BMC Software, Inc. v. U.S. Sec'y of Labor*,
454 F. Supp. 2d 1306 (Ct. Int'l Trade 2006)......................................15

*Former Emps. of Geokinetics, Inc. v. U.S. Sec'y of Labor*,
290 F. Supp. 3d 1348 (Ct. Int'l Trade 2018)........................................7

*Former Emps. of Weather Shield Mfg., Inc. v. U.S. Sec'y of
Labor*,
37 Ct. Int'l Trade 1015 (2013) ...........................................................15

*FPC v. Texaco, Inc.*,
417 U.S. 380 (1974)......................................................................11, 12

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017)...........................................................12

*JSG Trading Corp. v. U.S. Dep't of Agric.*,
176 F.3d 536 (D.C. Cir. 1999) ............................................................. 11

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ........................................................... 17

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State
Farm Mut. Automobile Ins. Co.*,
463 U.S. 29 (1983) ................................................................................. 7

*New American Keg v. United States*,
No. 20-008, 2021 WL 1206153 (Ct. Int'l Trade Mar. 23,
2021) ..................................................................................................... 6

*Nippon Steel Corp. v. United States*,
458 F.3d 1345 (Fed. Cir. 2006) ............................................................. 6

*NLRB v. Columbian Enameling & Stamping Co.*,
306 U.S. 292 (1939) ............................................................................... 6

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) ............................................................................. 10

**Statutes**

5 U.S.C. § 706(2)(A) ................................................................................. 7

18 U.S.C. § 1001 ..................................................................................... 14

19 U.S.C. § 2272(a)(2)(B)(i) ..................................................................... 2

19 U.S.C. § 2272(d)(3)(A)(ii) ..................................................................... 3

19 U.S.C. § 2316 ..................................................................................... 14

19 U.S.C. § 2395(b) ................................................................................. 6

## <u>GLOSSARY</u>

| Acronym or Abbreviation | Full Word or Phrase |
|---|---|
| APA | Administrative Procedure Act |
| AT&T | AT&T Services, Inc. |
| Labor | U.S. Department of Labor |
| TAA | Trade Adjustment Assistance |

## <u>INTRODUCTION</u>

In its Negative Determination on Remand, Labor once again concluded that Plaintiffs are not eligible for TAA.  ECF 37, at 13-18.[1]  In reaching that conclusion, Labor did not inform the Court of the specific evidence that supports its findings.  *See id.*  Nor did Labor grapple with detracting evidence, despite acknowledging its existence.  *See id.*  Instead, Labor provided a series of conclusory statements in support of the outcome it reached.  *See id.*  These same missteps befell Labor's unsupported and unlawful initial determinations.  *See Commc'ns Workers of Am. Local 4123, on behalf of Former Emps. of AT&T Servs., Inc. v. U.S. Sec'y of Labor*, 518 F. Supp. 3d 1342, 1351-56 (Ct. Int'l Trade 2021) ("*Local 4123*").  The Court should hold that these same errors require remand anew.

## <u>BACKGROUND</u>

## I.   <u>The Court's May 4, 2021 Opinion</u>

This appeal concerns whether Labor properly concluded that AT&T had not (1) shifted the supply of call center services, billing support

---

[1] Labor did not number the pages of its Negative Determination on Remand. Thus, for citation purposes, Plaintiffs have relied on the page numbers assigned by ECF that appear in the upper right-hand corner of the document.

services, or network operations center support services to a foreign country, or (2) contracted to have such services supplied by a foreign country. *See* 19 U.S.C. § 2272(a)(2)(B)(i). In two separate determinations, Labor concluded that no such changes in supply occurred, such that Plaintiffs are not eligible for TAA. *See* Pub. A.R. 154-62, Conf. A.R. 141-153 (initial determination); *see also* Pub. A.R. 382-87, Conf. A.R. 362-81 (reconsideration determination).[2]

In May 2021, the Court held that Labor's two determinations were unlawful and unsupported. *See Local 4123*, 518 F. Supp. 3d at 1357. With respect to Labor's initial determination, the Court held that "the certifying officer did not identify AT&T's evidence that she found persuasive." *Id.* at 1351. The Court also faulted Labor for "not acknowledge[ing], much less discuss[ing], [Plaintiffs'] evidence," as well as for failing to "explain – directly or indirectly – why the certifying officer chose AT&T's explanation over [Plaintiffs'] evidence." *Id.* at 1351-52. The Court reasoned that Labor must provide that explanation because "a fair reading of the job report" submitted by Plaintiffs "permits the drawing of

---

[2] "Pub. A.R. ___" refers to pages in the public version of the record, whereas "Conf. A.R. ___" refers to pages in the confidential version of the record. *See* ECF 15.

inferences that conflict with the certifying officer's conclusion." *Id.* at 1352.  The Court likewise pointed to "anecdotal evidence" submitted by Plaintiffs that "is also susceptible of the fair inference that the jobs in question were offshored." *Id.* at 1352 n.12 (citing Pub. A.R. 129-30).  As the Court summarized, "it's the agency's job to weigh the evidence—not to ignore the evidence on one side of the scale and leave it to the court to surmise why the agency made the decision it did." *Id.* at 1352.

Apart from Labor's failure to address detracting evidence and explain itself, the Court also flagged Labor's failure to "address whether [the certifying officer] had a reasonable basis for determining that the [noncertified information submitted by AT&T] was accurate and complete without being certified."  *Id.* at 1355; *see also id.* at 1351 (observing that "e-mail exchanges between AT&T's in-house counsel and Labor's investigator" were not certified).  The Court reached this holding after concluding that 19 U.S.C. § 2272(d)(3)(A)(ii) requires "Labor—when it relies upon noncertified information—to expressly find that it has a reasonable basis for determining the accuracy and completeness of such information and to explain the basis for that finding." *Id.* at 1355.

Turning to Labor's reconsideration determination, the Court concluded that it "suffered from the same defects as its initial determination." *Id.* at 1355. The Court explained that Labor's reconsideration determination "failed to identify AT&T's evidence upon which it relied," "failed to grapple with [Plaintiffs'] evidence from which conflicting inferences might be fairly drawn," and "made no finding that [Labor] could reasonably rely on [AT&T's noncertified] information." *Id.* at 1355-56.

## II.   <u>Labor's Negative Determination on Remand</u>

Labor submitted its Negative Determination on Remand to the Court on July 22, 2021. ECF 37. At the outset of its remand analysis, Labor states that the Court had remanded the matter so that Labor could

> 1) evaluate the workers' evidence relative to AT&T's in determining whether workers' job losses were caused by a shift in those services to, or an acquisition of those services from, foreign countries, and 2) address the creditability [sic] and reliability of "non-certified" evidence provided by AT&T, and 3) if a shift of work to foreign countries is determined to have occurred, determine whether such shift "contributed importantly" to workers' job losses.

ECF 37, at 13. As a result of its analysis of the first and second tasks, Labor concluded that no shift in services occurred and that evidence

provided by AT&T is credible and reliable. *Id.* at 13-17.[3]  Following its analysis of these two core issues, Labor spends the remainder of its discussion citing the relevant statutory standards and summarily concluding that Plaintiffs do not meet them, all the while providing a smattering of record cites without identifying the specific evidence from those pages on which it relies or explaining how such evidence supports its findings. *Id.* at 17-19.  Labor tops off its Negative Determination on Remand with a conclusory assertion that it has "careful[ly] reviewed" the record facts in concluding once again that Plaintiffs are not eligible for TAA. *Id.* at 18.

## SUMMARY OF THE ARGUMENT

The Court remanded this matter to Labor with instructions to undertake the straightforward task of providing the sort of analysis and explanation that the law demands.  Those instructions became an albatross for Labor.  Instead of completing the requested task, Labor provides a half-baked analysis that cites vast portions of the record, yet never informs the Court of the specific evidence that supports its findings.

---

[3] Based on its conclusion that no shift in services occurred, Labor did not assess whether a shift in services contributed importantly to the job losses.  ECF 37, at 18.

Labor acknowledges that detracting evidence exists, but it never actually grapples with it or explains why it deserves less weight. Labor provides one conclusion after another that fails to tell the Court why, as a matter of logic, it reached the conclusion that it did. The Court therefore has no choice but to remand anew.

### **STANDARD OF REVIEW**

The Court reviews Labor's fact-findings for "substantial evidence." 19 U.S.C. § 2395(b). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) (cleaned up). In deciding whether substantial evidence supports a finding of fact, the Court "must consider the record as a whole, including that which fairly detracts from its weight, to determine whether there exists such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (cleaned up). The Court may not sustain a decision that fails to address "contradictory evidence or evidence from which

conflicting inferences could be drawn." *New American Keg v. United States*, No. 20-008, 2021 WL 1206153, at *19 (Ct. Int'l Trade Mar. 23, 2021) (cleaned up).

Under the APA, the Court may separately set aside a Labor decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Labor acts arbitrarily and therefore unlawfully when it fails to provide "a reasoned basis" for its choices. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (cleaned up).  Proffering "conclusory statements" won't do.  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016). Instead, Labor "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up).  When Labor "has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars*, 136 S. Ct. at 2125 (cleaned up).

Finally, the Court also reviews Labor's remand determination "for compliance with the court's remand order." *Former Emps. of Geokinetics, Inc. v. U.S. Sec'y of Labor*, 290 F. Supp. 3d 1348, 1354 (Ct. Int'l Trade 2018) (cleaned up). Labor's failure to comport with the Court's remand order provides grounds for another remand. *See, e.g.*, *Anderson v. U.S. Sec'y of Agric.*, 469 F. Supp. 2d 1300, 1301 (Ct. Int'l Trade 2006).

**ARGUMENT**

## I.     Neither Law Nor Fact Supports Labor's Negative Determination on Remand

In *Local 4123*, the Court ordered Labor on remand to identify the specific evidence from AT&T that supports its findings, address detracting evidence submitted by Plaintiffs, and explain why it reasonably relied on AT&T's noncertified information. *See Local 4123*, 518 F. Supp. 3d at 1356. In doing so, Labor was required to provide a reasoned basis for its conclusions so that the Court would not be left in the dark on "why the agency made the decision it did." *Id.* at 1352. Labor's Negative Determination on Remand misses these targets.

### A.   <u>Labor Once Again Fails to Provide the Requisite Analysis and Explanation</u>

Labor spends the bulk of its remand analysis merely summarizing the competing record evidence and summarily asserting its decision to favor the evidence submitted by AT&T.   ECF 37, at 13-15.   Labor acknowledges that Plaintiffs submitted the 2018 Jobs Report, which (in Labor's words) details the "job losses suffered by AT&T employees throughout the U.S.," "presents a general assertion that AT&T work has been and continues to be moved to non-U.S. locations," "reports the closure of numerous U.S. call centers in various U.S. locations, including Indiana, Michigan, and Wisconsin," and "implies that [AT&T's] decisions to route calls to third-party call centers outside the U.S. may lead to reduced call volume for U.S. call centers." *Id.* at 13-14 (citing Pub. A.R. 18-25).   Labor also recognizes that Plaintiffs submitted additional evidence that "workers in Jamaica were performing the same type of call center work as workers at AT&T's Appleton, Wisconsin, office." *Id.* (citing Pub. A.R. 114).

Labor, however, concludes that none of Plaintiffs' evidence matters because "specific information supplied by AT&T [] did not reveal a basis for finding" that the evidence in the 2018 Jobs Report "applied to any of

the five [call] center[s]" at issue, and "AT&T explained that the work" performed in Jamaica was not "the same type of work as the Wisconsin workers." *Id.* at 14 (citing Pub. A.R. 121-28, 295-97, 336-37); *see id.* at 15 (discussing same and citing Pub. A.R. 122-24, 336-37).  In so doing, Labor cites thirteen pages in the record, but nowhere does it actually identify the specific evidence on these pages that supports its findings, nor does Labor explain why it gave greater weight to this evidence in view of this evidentiary conflict in the record.  *See id.*  As a result, Labor has failed to identify the basis of its decision "with such clarity as to be understandable.  It will not do for [the Court] to be compelled to guess at the theory underlying [Labor]'s action; nor can [the Court] be expected to chisel that which must be precise from what [Labor] has left vague and indecisive." *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947).

Labor next attempts to achieve the requisite clarity, stating that "[t]he general allegations in the [2018 Jobs Report] submitted by [Plaintiffs] did not include specific evidence or make specific claims that the work of the locations in question moved or was acquired from a foreign country" and that "the specific responses of AT&T's representatives [similarly] . . . did not support a basis for finding a shift

of the work of any of the five call centers to another country or the acquisition of such services from another country." ECF 37, at 14-15 (citing Pub. A.R. 121-28, 295-97, 336-37). Here, Labor offers two conclusions as reasons, but "conclusory statements" are not tantamount to reasoned explanations that tie the facts found to the choice made. *Encino Motorcars*, 136 S. Ct. at 2127; *see Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2576 (2019) ("Reasoned decisionmaking under the Administrative Procedure Act calls for an explanation for agency action."). Once again, Labor cannot be bothered to identify the specific evidence in this baker's dozen of pages that support its findings. *See* ECF 37, at 14-15. The Court is not in the business of "sift[ing] through the record evidence to find support for the result reached by the agency" so that it may pinch-hit for Labor. *JSG Trading Corp. v. U.S. Dep't of Agric.*, 176 F.3d 536, 546 (D.C. Cir. 1999); *FPC v. Texaco, Inc.*, 417 U.S. 380, 397 (1974) (An agency's decision "must be upheld, if at all, on the same basis articulated in the [decision] by the agency itself." (cleaned up)).

**B.**  **Labor Continues to Erroneously Rely on AT&T's Noncertified Statements**

Having failed to identify the specific record evidence that supports its findings, adequately address the evidence that detracts from those

findings, and provide a reasoned explanation for its choices, Labor next asserts that it properly relied on noncertified information submitted by AT&T.  ECF 37, at 15-17.  It provides three reasons for its conclusion, each of which is pure applesauce.

> First, Labor states that AT&T
>
> is in the best position to provide accurate, complete, and current information regarding its own operations and business decisions, and the responding officials each had access to the firm's records and to other officials with direct knowledge of the firm's operations and business decisions, including information about the circumstances of worker separations that [Plaintiffs] do not have.

*Id.* at 15.  Plaintiffs do not dispute that, as a general matter, AT&T "is in the best position to provide accurate, complete, and current information regarding its own operations and business operations."  *Id.*  However, nowhere does Labor cite any record evidence to support its sweeping assertion that the responding officials "each had access to the firm's records and to other officials with direct knowledge of the firm's operations, including information about the circumstances of worker separations[.]"  *Id.*  Nor does Labor identify any record evidence that could lay the foundation for such statements, such as the names, titles, and responsibilities of the officials with direct knowledge of the relevant

information.  *Id.*  Such findings bereft of evidentiary support cannot satisfy the substantial evidence standard.  *See, e.g.*, *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1046 (Fed. Cir. 2017) (vacating and remanding because the agency's "finding did not have an adequate basis in the record").

Labor next posits that it reasonably relied on AT&T's noncertified information because AT&T's

> responding official [was] formally notified of the statutory requirement to submit all information requested by [Labor] for official purposes[,] and in submitting the [business data requests] has affirmed, under penalty of law, knowledge of the statutory requirement and the veracity of the [business data request] responses provided to [Labor].  The statutory requirement to provide complete and accurate information subject to the penalty of law applies to all responses to [Labor's] investigations.

ECF 37, at 16 (citing Pub. A.R. 11-13, 26-27, 49-50, 59-60, 90).

Labor's second rationale suffers from factual and legal flaws.  To be sure, the record demonstrates that Labor informed AT&T that it must respond to the business data requests or face a subpoena (Pub. A.R. 11-13, 26-27, 49-50, 59-60, 88-90), and that various AT&T officials certified to the accuracy of their responses under the threat of penalty (Pub. A.R. 57, 67, 76, 98, 112).  But as the Court recognized in *Local 4123*, those

certifications did not extend beyond the business data request responses themselves.  *See* Pub. A.R. 57 ("Under penalty of law, I declare that to the best of my knowledge and belief the information I have provided *on this form* is true, correct, and complete." (emphasis added)); 67 (same), 76 (same), 98 (same), 112 (same); *see also Local 4123*, 518 F. Supp. 3d at 1347 n.4 (discussing same).  Thus, as a factual matter, the terms of these certifications preclude their application to AT&T's subsequent noncertified statements.

Moreover, Labor never identifies the specific statutory requirement to provide complete and accurate information (ECF 37, at 16), foisting upon the Court the unsolicited and unlawful task of "speculat[ing] on the reasons that might have supported [Labor's] decision."[4]  *Encino Motorcars*, 136 S. Ct. at 2127.  Regardless, the mere existence of a "statutory requirement" to provide accurate and complete information does not, on its own, serve as "a reasonable basis for determining the accuracy and completeness of such information."  *Local 4123*, 518 F. Supp. 3d at 1355.  After all, if the existence of such a requirement were always

---

[4] Plaintiffs assume that Labor's reference to "statutory requirement" is, in fact, the statutory requiremen*t*s found in 18 U.S.C. § 1001 and 19 U.S.C. § 2316.  *See, e.g.*, Pub. A.R. 112.

sufficient, Labor would have no need to require completed certifications in response to their business data requests. *But see* Pub. A.R. 57, 67, 76, 98, 112.

Setting aside these problems, Labor's vague and irrational position on the statutory requirement also conflicts with precedent. Both the Federal Circuit and the Court have confirmed in other TAA appeals that the threat of punishment, *together with a signed certification from the former employer as to the accuracy and completeness of the submitted information*, demonstrates that the information is "sufficiently trustworthy to constitute substantial evidence." *Former Emps. of Barry Callebaut v. Chao*, 357 F.3d 1377, 1383 (Fed. Cir. 2004); *accord Former Emps. of Weather Shield Mfg., Inc. v. U.S. Sec'y of Labor*, 37 Ct. Int'l Trade 1015, 1019 (2013) (discussing *Barry Callebaut*, 18 U.S.C. § 1001, and 19 U.S.C. § 2316). AT&T's noncertified statements plainly do not meet these twin requirements, and the Court should reject Labor's unexplained and unsupported decision to rely on those statements. *See Former Emps. of BMC Software, Inc. v. U.S. Sec'y of Labor*, 454 F. Supp. 2d 1306, 1335 n.51 (Ct. Int'l Trade 2006) ("What the Labor Department emphatically *may not* do is ignore or dismiss the [evidence] of petitioning workers while

treating as gospel the conflicting, unsworn, and uncorroborated statements of company officials (who may not even necessarily be speaking to matters within their competence)." (emphasis in original)).

Finally, Labor asserts that it properly relied on AT&T's noncertified statements because it notified AT&T officials at the outset of the investigation "that only knowledgeable as well as appropriate individuals should address the requests for information[.]" ECF 37, at 16 (citing Pub. A.R. 12-13, 26-27, 39-40, 49-50, 59-60, 83-84). The record passages cited by Labor, however, pertain only to Labor's requests that AT&T complete the business data requests; these passages do not cover any of the subsequent requests for information that Labor made to AT&T. Pub. A.R. 12-13, 26-27, 39-40, 49-50, 59-60, 83-84. Labor cites no record evidence demonstrating that it made similar requests when it sought additional information in noncertified form. ECF 37, at 16. The record passages cited by Labor therefore have no utility in answering whether Labor properly relied on AT&T's noncertified statements.

## C.   **The Remainder of Labor's Remand Analysis Cannot Support the Negative Determination on Remand**

Labor concludes its Negative Determination on Remand by summarizing various statutory standards and offering conclusory

statements that Plaintiffs do not meet these standards.  ECF 37, at 17-
18.  "Conclusory statements . . . do not fulfill [Labor's] obligation" under
the APA's arbitrary and capricious standard.  *In re Lee*, 277 F.3d 1338,
1344 (Fed. Cir. 2002).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court
vacate Labor's Negative Determination on Remand and remand anew to
Labor for further proceedings consistent with the Court's order and
opinion in this matter.

Respectfully submitted,

Bernd G. Janzen
Devin S. Sikes
Tebsy Paul
AKIN GUMP STRAUSS HAUER & FELD
LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel to Plaintiffs*

September 20, 2021

## **CERTIFICATE OF COMPLIANCE**

I, Bernd G. Janzen, an attorney with Akin Gump Strauss Hauer & Feld LLP, certify that Plaintiffs' Comments on the Negative Determination on Remand contains 3,331 words (according to the word count feature of the Microsoft Word processing program) and therefore complies with the word count limitation set forth in the Court's August 19, 2021 Scheduling Order.

 /s/ Bernd G. Janzen
Bernd G. Janzen

September 20, 2021                    *Counsel to Plaintiffs*