**Slip Op. 22-2**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

Court No. 20-00075

COMMUNICATIONS WORKERS OF AMERICA LOCAL 4123, on behalf of FORMER EMPLOYEES OF AT&T SERVICES, INC.,

*Plaintiff*,

v.

U.S. SECRETARY OF LABOR,

*Defendant*.

Before: M. Miller Baker, Judge

**OPINION**

[Remanding to the Department of Labor due to non-compliance with the initial remand order.]

Dated: January 5, 2022

*Bernd G. Janzen*, *Devin S. Sikes*, and *Tebsy Paul*, Akin Gump Strauss Hauer & Feld LLP of Washington, DC, on the brief for Plaintiff.

*Brian M. Boynton*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director; and *Ashley Akers*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, on the brief for Defendant. Of counsel on the brief was *Tecla A.*

*Murphy*, Attorney Advisor, Employment and Training Legal Services, Office of the Solicitor, U.S. Department of Labor of Washington, DC.

*Baker*, Judge: This matter has returned to the court following a remand necessitated by the Department of Labor's twin failures to address certain evidence submitted by the union and to explain why it relied on noncertified evidence from the union members' former employer, AT&T. *See generally Comm'cns Workers of Am. Local 4123 ex rel. Former Emps. of AT&T Servs., Inc. v. U.S. Sec'y of Labor*, Ct. No. 20-00075, Slip Op. 21-53 (CIT May 4, 2021). Regrettably, the court must remand a second time because Labor again fails to explain why it has a reasonable basis to rely on noncertified information from AT&T.

## Background

The genesis of this case is explained in Slip Opinion 21-53, *above*. In brief, a union challenged the Labor Department's denial of trade adjustment assistance benefits to former AT&T call center workers, alleging that AT&T laid off the workers to send their jobs to call centers located abroad. The court agreed with the union "that Labor's summary denial of benefits [was] not supported by substantial evidence, and remand[ed] for further proceedings . . . ." *Id.* at 2.

The court found that Labor had failed to acknowledge, or even discuss, the evidence the union submitted in support of its petition, and further failed to explain why the certifying officer credited AT&T's explanations over the union's evidence. *Id.* at 19. The

court explained that the union's evidence, "fairly read, at least allows for an inference that the closure of the call centers in question will result in the offshoring of job functions previously performed in those facilities." *Id.* at 21. That inference, in turn, could detract from Labor's conclusion, so the court remanded, with the intention that the Department would address the union's evidence and weigh it against AT&T's evidence, in order to determine whether the relevant job losses were caused by a shift in services to, or an acquisition of those services from, foreign countries—as described in 19 U.S.C. § 2272(a)(2). ECF 31, at 1.

Additionally, in its prior decision, the court faulted Labor for failing to identify which evidence produced by AT&T persuaded the certifying officer that AT&T had it right. Labor's initial ruling simply stated, "AT&T officials have confirmed the work remained in the United States." *Id.* at 18 (quoting AR160).[1] The court explained why such a general finding was problematic:

> While the Court can reasonably discern that [the certifying officer] found AT&T's evidence convincing, that fact alone is not enough because portions of AT&T's evidence (its questionnaire responses) were certified pursuant to 19 U.S.C. § 2272(d)(3)(A)(i) while other portions (the e-mail exchanges between AT&T's in-house counsel and Labor's investigator) were not. . . . [T]he upshot is that the Court is unable to determine

---

[1] Citations to "AR" refer to the public version of the administrative record, ECF 15.

whether, or to what extent, the certifying officer relied upon AT&T's noncertified evidence. The Court must remand so that Labor can do so . . . .

*Id.* at 18–19.[2] Accordingly, the court directed the Department to explain—insofar as it relied on noncertified evidence—why it " 'has a reasonable basis for determining that such information is accurate and complete without being certified,' 19 U.S.C. § 2272(d)(3)(A)(ii)," or else require AT&T to certify its evidence. ECF 31, at 1–2.

Finally, the court directed Labor—if it found the union's evidence to be convincing—to "address whether the shift to, or acquisition from, foreign countries 'contributed importantly' " to the job losses, as described in 19 U.S.C. § 2272(a)(2)(B)(ii), ECF 31, at 2.

## Labor's Remand Determination

Labor's remand determination (ECF 37) states that in response to the court's remand order, the Department reviewed the union's jobs report provided during the original investigation, "additional allegations provided by the petitioner during the reconsideration investigation," and other information provided by AT&T officials. *Id.* at 13 (citing AR114 as to the quoted material).

---

[2] After issuing its initial determination, Labor granted reconsideration, and then reached the same result in its "reconsideration determination." The court found that determination flawed for the same reasons as the Department's original determination. *Id.* at 28.

Labor's decision explains that the jobs report refers to nationwide job losses suffered by AT&T employees, "presents a general assertion that AT&T work has been and continues to be moved to non-U.S. locations," and "implies that the firm['s] decisions to route calls to third-party call centers outside the U.S. may lead to reduced call volume for U.S. call centers." *Id.* at 13–14 (emphasis added). As to the "additional allegations," the decision notes that they implied that workers in Jamaica "were performing the same type of call center work as workers at AT&T's Appleton, Wisconsin, office." *Id.* at 14 (citing AR114).

The reconsideration determination finds that "[t]he general allegations in the AT&T 2018 Jobs Report submitted by petitioner were countered by specific information supplied by AT&T that did not reveal a basis for finding the job report allegations applied to any of the five center investigations." *Id.* (emphasis added) (citing AR121–28, AR295–97, AR336–37). Likewise, AT&T explained that the workers in Jamaica were not performing the same sort of work as the Wisconsin call center workers "and provided additional information addressing the differences in types of calls handled by the call centers." *Id.* (citing AR122–24, AR336–37).

The remand determination therefore concludes:

The general allegations in the jobs report submitted by petitioner did not include specific evidence or make specific claims that the work of the locations in question moved to or was acquired from a foreign country, and were countered by the specific responses of AT&T's

representatives, which did not support a basis for finding a shift of the work of any of the five call centers to another country or the acquisition of such services from another country.

*Id.* at 14–15 (emphasis added).

Turning to the second issue the court directed it to address, Labor's decision states that the Department found the information provided by AT&T "to be accurate and complete" for two reasons: (1) AT&T was "in the best position to provide accurate, complete, and current information regarding its own operations and business decisions," *id.* at 15; and (2) "the responding officials each had access to the firm's records and to other officials with direct knowledge of the firm's operations and business decisions, including information about the circumstances of worker separations that the petitioner does not have." *Id.*

Labor then addresses whether AT&T's responses needed to be certified:

> [A]t the onset of the investigation process, the firm's responding official is formally notified of the statutory requirement to submit all information requested by the Department for official purposes and in submitting the [questionnaire] has affirmed, under penalty of law, knowledge of the statutory requirement and the veracity of the [questionnaire] responses provided to the Department. *The statutory requirement to provide complete and accurate information subject*

*to penalty of law applies to all responses to the Department's investigations.*

*Id.* at 16 (emphasis added) (citing, after the final sentence, AR11–13, AR26–27, AR49–50, AR59–60, and AR90).

Labor also states that AT&T's officials were "aware of the role they played" because at the beginning of the process, the Department's communications stated that "only knowledgeable as well as appropriate individuals should address the request for information" and that the officials should notify the Department promptly if someone else were a more appropriate contact person. *Id.* (citing AR12–13, AR26–27, AR39–40, AR49–50, AR59–60, and AR83–84). Therefore, "[t]he letter notification, the completion of the Affirmation of Information section within the Business Data Request forms, and concurrent and subsequent email correspondences with AT&T's representatives confirmed the accuracy and credibility of the information provided by the employer (AT&T)." *Id.* at 16–17.

The remand determination then affirms Labor's prior finding that the union's members were not eligible for trade adjustment assistance and therefore concludes that it was unnecessary to address whether offshoring of jobs "contributed importantly" to their separation. *Id.* at 17–18.

After Labor filed the remand determination (ECF 39), the union (ECF 40) and the government (ECF 41) filed comments.

**Standard of Review**

The standard of review remains the same as it was in the previous proceeding before this court and is prescribed by 19 U.S.C. § 2395(b), which provides that "[t]he findings of fact by the Secretary of Labor, . . . if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to such Secretary to take further evidence, and such Secretary may thereupon make new or modified findings of fact and may modify his previous action, and shall certify to the court the record of the further proceedings."

"Substantial evidence is more than a scintilla[ ] and must do more than create a suspicion of the existence of the fact to be established. A reviewing court must consider the record as a whole, including that which fairly detracts from its weight, to determine whether there exists such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (cleaned up).

Labor's decision is also subject to the default standard of the Administrative Procedure Act, which allows a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1362 (Fed. Cir. 2003) (stating, in trade adjustment case, that "[t]he Court of International Trade also has the authority under the

Administrative Procedure Act to set aside the decision as contrary to law or arbitrary and capricious").

**Discussion**

Labor's remand determination addresses the union's evidence but fails to adequately address the question of why AT&T's evidence was satisfactory without statutory certification. As a result, the court remands again regarding this second issue.

**I.**

In finding that Labor's original determinations[3] did not address the union's evidence, the court explained that while it could reasonably be discerned that the certifying officer found AT&T's evidence convincing, the problem was that "Labor's negative determination simply did not acknowledge, much less discuss, the union's evidence, which . . . consisted of a job report and certain anecdotal examples of offshoring of work," nor did Labor's determinations explain the reason "why the certifying officer chose AT&T's explanation over the union's evidence." Slip Op. 21-53, at 19.

Labor's remand determination remedies this deficiency. It explains that the certifying officer reviewed the union's jobs report and anecdotal examples of offshoring and the material provided by AT&T. ECF 37,

---

[3] The term "Labor's original determinations" refers collectively to the Department's initial denial of benefits for the union's members, AR154 *et seq.*, and subsequent reaffirmation of that determination on reconsideration, AR382 *et seq.*

at 13. The remand determination characterizes the jobs report as presenting "general assertions" about offshoring of work and states that the report "implies" that offshoring "may lead to reduced call volume" for domestic call centers. *Id.* at 13–14. It also notes, "The general allegations in the jobs report submitted by petitioner did not include specific evidence or make specific claims that the work *of the locations in question* moved to or was acquired from a foreign country . . . ." *Id.* at 14–15 (emphasis added).

The remand determination also explains that AT&T provided "specific information" in response to the union's submission, that the company's information "did not reveal a basis for finding the job report allegations applied to any of the five center investigations," and that the workers in Jamaica discussed in the anecdotal evidence were not performing the same sort of tasks as the workers in Wisconsin. *Id.* at 14–15.

For these reasons, Labor's remand determination complies with the court's remand order because it addresses the jobs report and explains why the certifying officer concluded that its implications, which were based on very general allegations, were rebutted by more specific evidence provided by AT&T. The court therefore concludes that Labor's determination is now sufficiently supported by substantial evidence.

## II.

The second issue on which the court remanded was Labor's reliance on unverified statements from AT&T officials. The statute provides:

> The Secretary shall require a firm or customer to certify—
>
> (i) all information obtained under paragraph (1) from the firm or customer (as the case may be) through questionnaires; and
>
> (ii) all other information obtained under paragraph (1) from the firm or customer (as the case may be) on which the Secretary relies in making a determination under section 2273 of this title, *unless the Secretary has a reasonable basis for determining that such information is accurate and complete without being certified.*

19 U.S.C. § 2272(d)(3)(A) (emphasis added).[4]

The court explained that this provision requires Labor to mandate certification of all questionnaire responses and that, as to other information "obtained . . . from the firm" on which it "relies," "the Department must require certification *unless* Labor has 'a reasonable basis for determining that such information is accurate and complete without being certified.'" Slip Op. 21-53, at 24–25 (emphasis in original) (quoting 19 U.S.C. § 2272(d)(3)(A)(ii)). "The Court interprets

---

[4] The references to "paragraph (1)" refer to 19 U.S.C. § 2272(d)(1), which reads, "The Secretary shall, in determining whether to certify a group of workers under section 2273 of this title, obtain from the workers' firm, or a customer of the workers' firm, information the Secretary determines to be necessary to make the certification, through questionnaires and in such other manner as the Secretary deems appropriate."

this [second obligation] as requiring Labor—when it relies upon noncertified information—to expressly find that it has a reasonable basis for determining the accuracy and completeness of such information and to explain the basis for that finding." *Id.* at 26–27.

The court further explained that Labor did not address what portion(s) of AT&T's evidence the certifying officer found convincing, so the court was "unable to determine whether she relied on the certified questionnaire responses, the noncertified e-mail correspondence with AT&T's in-house counsel, or some combination of both," *id.* at 27, and, insofar as the decision relied on any noncertified information, it did not address "whether she had a reasonable basis for determining that the information was accurate and complete without being certified," *id.*

## A.

Labor's remand determination still does not state whether the certifying officer relied on the questionnaire responses, the noncertified e-mail communications, or both. The decision does cite various administrative record pages. *See* ECF 37, at 14 (citing AR121–28); at 15 (citing AR121–28, AR295–97, AR336–37 (twice), and AR122–24); at 17 (citing AR53, AR63, AR73, AR92, AR106, AR250–61, AR266–67, AR272–73, AR295–97, AR300–03, AR307–11, AR325, AR341–42, AR349–50, AR54, AR64, AR72, AR94, AR108, and AR372). The court has reviewed these administrative record materials. AT&T's questionnaire responses, all of which were certified as required by the statute, appear at pages AR51–57, AR61–67, AR70–76, AR90–98,

and AR104–112. The other citations all refer to noncertified e-mail communications.

Page 17 of the remand determination contains string citations that include both questionnaire responses and noncertified e-mail communications. The court therefore concludes that the certifying officer relied on both types of material. But as with the original and reconsideration determinations, Labor's remand determination does not reveal to what extent the certifying officer relied on the certified questionnaire responses or the noncertified e-mail communications. Thus, the court still cannot discern whether the certifying officer believed the questionnaire responses alone would have been enough and the noncertified e-mail communications simply provided additional corroborating evidence—or whether, instead, the certifying officer regarded the e-mail communications as essential to her analysis. The court therefore must remand again, unless the remand determination complies with 19 U.S.C. § 2272(d)(3)(A)(ii)'s requirement that Labor—to the extent that it relies on uncertified information—provide a "reasonable basis for determining that such information is accurate and complete without being certified."

## B.

The remand determination does not show that Labor required AT&T to certify the e-mail communications as part of the remand proceedings, and the government did not file a supplemental administrative record with the court reflecting any such certification. The remand determination does, however, discuss why

the certifying officer considered AT&T's submissions accurate and complete, so the question for the court is whether that discussion complies with the statute.

1.

The remand determination observes as follows:

> The written statements provided to the Department by AT&T's Assistant Vice President, Senior Legal Counsels in the course of the reconsideration investigation about AT&T's own business operations were determined by the Department to be accurate and complete based upon the following: the firm is in the best position to provide accurate, complete, and current information regarding its own operations and business decisions, and the responding officials each had access to the firm's records and to other officials with direct knowledge of the firm's operations and business decisions, including information about the circumstances of worker separations that the petitioner does not have.

ECF 37, at 15.

The problem with this finding is that, while it does constitute a finding that the information was "accurate and complete," it does not provide a reasonable basis for reaching that conclusion. Of course AT&T's personnel are in the best position to know about their company's operations and business decisions and have the best access to records. But mere knowledge is not itself a reason to presume that the response is

truthful, which is presumably why Congress chose to impose the certification requirement in the first place.[5]

The remand determination further states that "[t]he statutory requirement to provide complete and accurate information subject to penalty of law applies to all responses to the Department's investigations." *Id.* (citing AR11–13, AR26–27, AR49–50, AR59–60, and AR90). The decision cites no statute or regulation in support of this proposition, however, and the cited record pages do not support the assertion.[6]

---

[5] The remand determination also notes that the questionnaires must be certified "under penalty of law." *Id.* at 16. That statement is irrelevant for purposes of the reliability of noncertified e-mail communications.

[6] The first four citations all refer to the same boilerplate letter Labor sends to firms as part of the initiation of trade adjustment assistance investigations, and the letter says nothing about the obligation to "provide complete and accurate information subject to penalty of law," much less any ongoing obligation throughout the investigation. Rather, the letter explains the importance of the questionnaires, asks the recipient to "preview" the questionnaire form on the Department's website, advises that Labor personnel will contact the recipient and will forward the actual form, and emphasizes the need for a timely response to avoid the need for a subpoena. *See, e.g.*, AR12–13. The final cited page, AR90, advises the recipient how to respond. Like the initiation letter, that page also says nothing about an obligation to "provide complete and accurate information subject to penalty of law," nor does it say anything at all about any such ongoing obligation—indeed, it is completely silent about later phases of the investigation.

**2.**

The government's comments in support of the remand determination invoke 19 U.S.C. § 2316(2). The government contends that the union's argument that "the terms of the certifications on the [questionnaire] refer specifically to [']the information . . . on this form,' " ECF 41, at 17 (citing ECF 40, at 13–14), fails because

> Plaintiffs misconstrue both the remand results and the legal penalty. The legal penalty applies to "Any person who . . . makes a false statement of a material fact knowing it to be false, or knowingly fails to disclose a material fact, when providing information . . . during an investigation of a [TAA petition]." The penalty for false statements applies regardless of whether the information is provided with or without a certification.

ECF 41, at 17–18 (citation omitted; alterations in original) (quoting 19 U.S.C. § 2316(2)).[7]

The court finds three problems with this argument. To begin with, Labor's remand results do not cite that statute anywhere. Labor simply states, *ipse dixit*, that

---

[7] The statute the government cites provides that "[a]ny person who— . . . (2) makes a false statement of a material fact knowing it to be false, or knowingly fails to disclose a material fact when providing information to the Secretary during an investigation of a petition under section 2271 of this title, shall be imprisoned for not more than one year, or fined under title 18, or both." 19 U.S.C. § 2316(2).

"[t]he statutory requirement to provide complete and accurate information subject to penalty of law applies to all responses to the Department's investigations" and then cites ten pages of the administrative record, rather than a statute. ECF 37, at 16 (citing AR11–13, 26–27, 49–50, 59–60, 90). Thus, the government's invocation of 19 U.S.C. § 2316(2) is an after-the-fact explanation.

Second, if the court were to accept the government's theory about § 2316(2)'s significance, it would effectively read § 2272(d)(3)(A) out of the statute. If it were sufficient for Labor simply to point to § 2316(2), then neither part of § 2272(d)(3)(A) would serve any purpose because (i) there would be no reason to require certification of the questionnaire responses because they would be presumptively reliable under § 2316(2) and (ii) for that same reason, there would never be any reason for the Department to require certification of any other information.

"If it is possible to give effect to both statutes, we must do so." *PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1357 (Fed. Cir. 2018) (citing *Watt v. Alaska*, 451 U.S. 259, 267 (1981)). "If any interpretation of the statutory provisions at issue allows both statutes to remain operative, the court must adopt that interpretation absent a clear congressional directive to the contrary." *Id.* Moreover, "[a] basic tenet of statutory construction is that a specific statute takes precedence over a more general one." *Id.* at 1358 (quoting *Arzio v. Shinseki*, 602 F.3d 1343, 1347 (Fed. Cir. 2010)). These principles mean that § 2316(2) does

not excuse Labor's failure to comply with the certification requirement in § 2272.

Finally, the mere existence of a statutory obligation under § 2316(2) to give truthful responses is not enough of a reason, without more, to conclude that the respondent is aware of that obligation and the consequences for noncompliance. In contrast, Labor's questionnaires contain an express admonition that knowingly providing false information violates two federal statutes (18 U.S.C. § 1001 and 19 U.S.C. § 2316), followed by a notice that by signing the form, the respondent agrees to a statement that he is certifying the information's truth, accuracy, and completeness under "penalty of law." *See, e.g.*, AR35 (blank questionnaire).

Thus, the court concludes that the remand determination's unsupported assertion that "all responses to the Department's investigations" must consist of "complete and accurate information subject to penalty of law" is insufficient as a matter of law to satisfy Labor's obligation under § 2272(d)(3)(A)(ii).

### 3.

The remand determination concludes that the certification of the questionnaire responses "and concurrent and subsequent email correspondences with AT&T's representatives confirmed the accuracy and credibility of the information provided by the employer (AT&T)." *Id.* at 16–17.

That conclusion is a non sequitur. Certification of questionnaire responses does not apply to noncertified

information, as the statute imposes a separate obligation for such information. Finally, "concurrent and subsequent email correspondences with AT&T's representatives" cannot "confirm[ ] the accuracy and credibility" of that same e-mail correspondence. Such a rationale is circular.[8]

* * *

The court therefore remands because Labor has disregarded 19 U.S.C. § 2272(d)(3)(A)(ii) and the court's remand order. While Labor's remand determination concludes that the information AT&T submitted was "accura[te] and credib[le]," ECF 37, at 17, the findings on which the Department bases that conclusion are not supported by substantial evidence in the administrative record and do not fairly meet the statute's requirement.

On remand, if Labor relies on noncertified evidence, it must reasonably explain why it finds that noncertified evidence accurate and complete. To the extent that it relies on noncertified evidence but cannot state a reasonable basis for finding it accurate and complete, the Department must direct AT&T to certify the relevant evidence as described in 19 U.S.C. § 2272(d)(3)(A)(ii).

---

[8] Labor also points to its notification letter to AT&T. But the portion of the "letter notification" the decision cites relates only to determining whom the Department should contact for matters relating to the investigation—it has nothing to do with certification of the accuracy of responses provided during the investigation.

## Conclusion

For the reasons provided above, the court remands this matter to Labor for further proceedings consistent with this opinion. A separate remand order will issue.

Dated: January 5, 2022  /s/ *M. Miller Baker*
New York, NY  M. Miller Baker, Judge