DEPARTMENT OF LABOR

Employment and Training Administration

TA-W-94,578

MICHIGAN BELL TELEPHONE COMPANY
A DIRECT WHOLLY-OWNED SUBSIDIARY OF AT&T TELEHOLDINGS, INC.
DIGITAL, RETAIL, & CARE
UVERSE
CUSTOMER LOYALTY GROUP
RETENTION CENTER
KALAMAZOO, MICHIGAN

TA-W-94,578A

WISCONSIN BELL, INC.
A DIRECT WHOLLY-OWNED SUBSIDIARY OF AT&T TELEHOLDINGS, INC.
DIGITAL, RETAIL, & CARE
UVERSE
SALES DEPARTMENT
ACQUISITION CENTER
APPLETON, WISCONSIN

TA-W-94,578B

INDIANA BELL TELEPHONE COMPANY INCORPORATED
A DIRECT WHOLLY-OWNED SUBSIDIARY OF AT&T TELEHOLDINGS, INC.
DIGITAL, RETAIL, & CARE
UVERSE
SALES DEPARTMENT
ACQUISITION CENTER
INDIANAPOLIS, INDIANA

TA-W-94,578C

AT&T SERVICES, INC.
A SUBSIDIARY OF AT&T, INC. & AT&T TELEHOLDINGS, INC.
AT&T FINANCE BILLING OPERATIONS
AT&T GLOBAL BILLING RESOLUTION TEAM
SYRACUSE, NEW YORK

TA-W-94,578D

AT&T SERVICES, INC.
A SUBSIDIARY OF AT&T, INC. & AT&T TELEHOLDINGS, INC.
NETWORK OPERATION CENTER

911 NETWORK OPERATIONS CENTER, WHOLESALE SIGNALING NETWORK
OPERATIONS CENTER, AND VOIP2TDM NETWORK OPERATIONS CENTER
MERIDEN, CONNECTICUT

Notice of Negative Determination on Second Remand

On January 5, 2022, the United States Court of International
Trade (USCIT) issued an opinion and remand order in Communications
Workers of America Local 4123, on behalf of Former Employees of
AT&T Services, Inc. v. United States Secretary of Labor (Court No.
20-00075). In the opinion, the USCIT remanded the matter to the
Department of Labor ("the Department") in order for the Department
to "explain why it has a reasonable basis to rely on noncertified
information from AT&T;" or "direct AT&T to certify the relevant
[noncertified] evidence" upon which the Department relied in
making its Negative Determination on Remand.

## TRADE ADJUSTMENT ASSISTANCE WORKER GROUP ELIGIBILITY CRITERIA

Workers of a firm may be eligible for worker adjustment
assistance if they satisfy the criteria of subsection (a), (b) or
(e) of Section 222 of the Act, 19 U.S.C. § 2272(a), (b) and (e).
For the Department of Labor to issue a certification for workers
under Section 222(a) of the Act, 19 U.S.C. § 2272(a), the following
criteria must be met:

(1)  The first criterion (set forth in Section 222(a)(1) of the
     Act, 19 U.S.C. § 2272(a)(1)) requires that a significant
     number or proportion of the workers in the workers' firm must
     have become totally or partially separated or be threatened
     with total or partial separation.

(2)  The second criterion (set forth in Section 222(a)(2) of the

Act, 19 U.S.C. § 2272(a)(2)) may be satisfied in one of two ways:

(A) Increased Imports Path:

(i)   sales or production, or both, at the workers' firm must have decreased absolutely; AND

(ii)  (I)   imports of articles or services like or directly competitive with articles or services produced or supplied by the workers' firm have increased, OR

      (II)(aa)  imports of articles like or directly competitive with articles into which the component part produced by the workers' firm was directly incorporated have increased; OR

      (II)(bb)  imports of articles like or directly competitive with articles which are produced directly using the services supplied by the workers' firm have increased; OR

      (III)  imports of articles directly incorporating component parts not produced in the U.S. that are like or directly competitive with the article into which the component part produced by the workers' firm was directly incorporated have increased; AND

(iii) the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm.

(B) Shift in Production or Supply Path:

(i)(I)   there has been a shift by the workers' firm to a foreign country in the production of articles or supply of services like or directly competitive with those produced/supplied by the workers' firm; OR

   (II)  there has been an acquisition from a foreign country by the workers' firm of articles/services that are like or directly competitive with those produced/supplied by the workers' firm; and

(ii) the shift described in clause (i)(I) or the acquisition of articles or services described in clause (i)(II) contributed importantly to such workers' separation or threat of separation.

For the Department to issue a secondary worker certification under Section 222(b) of the Act, 19 U.S.C. § 2272(b), to workers of a Supplier or a Downstream Producer, the following criteria must be met:

(1)   a significant number or proportion of the workers in the workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated;

(2)   the workers' firm is a Supplier or Downstream Producer to a firm that employed a group of workers who received a certification of eligibility under Section 222(a) of the Act, 19 U.S.C. § 2272(a), and such supply or production is related to the article or service that was the basis for such certification; and

(3)   either
(A)   the workers' firm is a supplier and the component parts it supplied to the firm described in paragraph (2) accounted for at least 20 percent of the production or sales of the workers' firm;
or
(B) a loss of business by the workers' firm with the firm described in paragraph (2) contributed importantly to the workers' separation or threat of separation.

Section 222(c) of the Act, 19 U.S.C. § 2272(c), defines the terms "Supplier" and "Downstream Producer."

Workers of a firm may also be considered eligible if they are publicly identified by name by the International Trade Commission as a member of a domestic industry in an investigation resulting in a category of determination that is listed in Section 222(e) of the Act, 19 U.S.C. § 2272(e).

The group eligibility requirements for workers of a firm under Section 222(e) of the Act, 19 U.S.C. § 2272(e), can be satisfied if the following criteria are met:

(1)   the workers' firm is publicly identified by name by the International Trade Commission as a member of a domestic industry in an investigation resulting in--
(A)   an affirmative determination of serious injury or threat thereof under section 202(b)(1);
(B)   an affirmative determination of market disruption or threat thereof under section 421(b)(1); or

> (C)   an affirmative final determination of material injury or threat thereof under section 705(b)(1)(A) or 735(b)(1)(A) of the Tariff Act of 1930 (19 U.S.C. 1671d(b)(1)(A) and 1673d(b)(1)(A));
>
> (2)   the petition is filed during the 1-year period beginning on the date on which--
>
> > (A)   a summary of the report submitted to the President by the International Trade Commission under section 202(f)(1) with respect to the affirmative determination described in paragraph (1)(A) is published in the Federal Register under section 202(f)(3); or
> >
> > (B)   notice of an affirmative determination described in subparagraph (1) is published in the Federal Register; and
>
> (3)   the workers have become totally or partially separated from the workers' firm within--
>
> > (A)   the 1-year period described in paragraph (2); or
> >
> > (B)   notwithstanding section 223(b), the 1-year period preceding the 1-year period described in paragraph (2).

## SUMMARY OF PREVIOUS INVESTIGATIONS

### I.   Initial Investigation

#### 1) Petition Information

On March 4, 2019, a petition for Trade Adjustment Assistance (TAA) was filed by Communications Workers of America (CWA), Local 4123 on behalf of the workers and former workers of Michigan Bell Telephone Company, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Customer Loyalty Group, Retention Center, Kalamazoo, Michigan (TA-W-94,578, herein referred to as "AT&T Kalamazoo"); Wisconsin Bell, Inc., a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Appleton, Wisconsin (TA-W-94,578A, herein

referred to as "AT&T Appleton"); Indiana Bell Telephone Company Incorporated, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Indianapolis, Indiana (TA-W-94,578B, herein referred to as "AT&T Indianapolis"); AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., AT&T Finance Billing Operations, AT&T Global Billing Resolution Team, Syracuse, New York (TA-W-94,578C, herein referred to as "AT&T Syracuse"); and AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., Network Operation Center, 911 Network Operations Center, Wholesale Signaling Network Operations Center, and VOIP2TDM Network Operations Center, Meriden, Connecticut (TA-W-94,578D, herein referred to as "AT&T Meriden"). Herein, when discussing the five AT&T locations collectively, they will be known as "the five subject locations."

The subject workers were engaged in activities related to the supply of telecommunications services, as indicated in CWA's petition filing. AR1-4. In a subsequent email, CWA confirmed that it intended for its petition to cover workers at five locations: AT&T Kalamazoo (TA-W-94,578), AT&T Appleton (TA-W-94,578A), AT&T Indianapolis (TA-W-94,578B), AT&T Syracuse (TA-W-94,578C), and AT&T Meriden (TA-W-94,578D). AR14-15. The workers at AT&T Kalamazoo (TA-W-94,578) provided call center operations support services. AR71. The workers at AT&T Appleton (TA-W-94,578A)

provided call center operations support services. AR52. The workers at AT&T Indianapolis (TA-W-94,578B) provided call center operations support services. AR62. The workers at AT&T Syracuse (TA-W-94,578C) provided billing support services. AR105. The workers at AT&T Meriden (TA-W-94,578D) provided network operations center support services. AR91.

### 2) Initial Determination

After addressing all worker group eligibility criteria for TAA certification, the Department issued a negative determination regarding eligibility to apply for worker adjustment assistance, applicable to workers and former workers of the five subject locations on July 1, 2019. AR154-162. The Department's Notice of Determination was published in the *Federal Register* on August 29, 2019 (84 FR 45531).

### II. <u>Reconsideration Investigation</u>

### 1) Application for Reconsideration

By application dated July 25, 2019, the CWA, Local 4123 requested administrative reconsideration of the Department's negative determination regarding eligibility to apply for worker adjustment assistance, applicable to workers and former workers at the five subject locations, pursuant to 29 CFR 90.18(c). AR174.

The request for reconsideration was granted, and the Department's Notice of Affirmative Determination Regarding Application for Reconsideration was issued on August 30, 2019, and

published in the *Federal Register* on September 24, 2019 (84 FR 50076). AR175-178.

### 2) Reconsideration Determination

On January 21, 2020, the Department issued a negative determination on reconsideration regarding eligibility to apply for TAA applicable to workers and former workers at the five subject locations, based on the finding that the worker group eligibility criteria set forth in Section 222 of the Act, 19 U.S.C. § 2272, were not met. AR382-387.

### III. First Remand

### 1) Court Order

On May 4, 2021, the USCIT issued an opinion remanding the case to the Department. Within the remand order the Department was directed to 1) address workers' evidence and to weigh it against AT&T's evidence in determining whether workers' job losses were caused by a shift in those services to, or an acquisition of those services from, foreign countries, as described in 19 U.S.C. 2272(a)(2); and 2) in regards to "non-certified" evidence provided by AT&T, either find that it "has a reasonable basis for determining that such information is accurate and complete without being certified," and explain the basis for that finding, or else require AT&T to certify its evidence, and 3) if, on remand, Labor finds workers' evidence convincing, the Department must address whether the shift to, or acquisition from, foreign countries

"contributed importantly" to workers' job losses as described in 19 U.S.C. 2272(a)(2)(B)(ii). <u>Communications Workers of America Local 4123, on behalf of Former Employees of AT&T Services, Inc.</u> v. <u>United States Secretary of Labor</u> (Court No. 20-00075).

### 2) First Remand Determination

On July 22, 2021, the Department issued a Notice of Negative Determination on Remand regarding eligibility to apply for TAA applicable to workers and former workers at the five subject locations based on the finding that the worker group eligibility criteria set forth in Section 222 of the Act, 19 U.S.C. § 2272, were not met.

## IV.   SECOND REMAND

### 1) Court Order

On January 5, 2022, the USCIT issued an opinion remanding the case to the Department. Within the remand order the Department was directed: 1) provide a reasonable basis for its decision to rely on noncertified evidence submitted by AT&T; or 2) direct AT&T to certify the relevant noncertified evidence upon which the Department relied in making its Negative Determination on Remand.

### 2) Petitioner's Allegation – Initial Investigation

In support of its petition, CWA, Local 4123 submitted a copy of the CWA's "AT&T 2018 Jobs Report," referenced in the petition, which describes job losses by AT&T call center employees throughout

the U.S. and makes general assertions that work is being moved to non-U.S. locations. In the jobs report, closures are reported in various AT&T locations, including AT&T Indianapolis, AT&T Kalamazoo, and AT&T Appleton. AR20, 22.

The petitioner submitted additional anecdotal information implying that workers in Jamaica were performing the same type of call center work as workers at AT&T Appleton. AR129-130.

As it relates to the petitioner's allegation (that work was being offshored from the five subject locations), the jobs report provided a narrative that offshoring of call center work was generally occurring within AT&T at large, but did not present evidence that such a shift occurred with respect to any of the five subject locations. AR14-23. The CWA report also reported one instance of a return of call center work to the U.S. from offshore locations. AR23.

### 3) Applicant's Allegation – Reconsideration Investigation

During the reconsideration investigation, the Department pursued additional lines of questioning with AT&T pertaining to the applicant's allegation(s) and collected additional clarifications about whether 1) any of the work at the five subject locations was shifted to another country or countries or acquired from a foreign country, and 2) the group of workers or any portion of any of such a group met any of the worker group eligibility criteria for TAA certification.

**4) Identification of Authorized AT&T Officials**

On March 8, 2019, the Department was informed in an email from AT&T's Assistant Vice President - Senior Legal Counsel, Chicago, Illinois (herein referred to as "AT&T AVP-SLC #1"), that for the duration of the investigation process, AT&T AVP-SLC #1 would be the "appropriate contact person" to provide information directly to the Department about AT&T Kalamazoo (TA-W-94,578), AT&T Appleton (TA-W-94,578A), and AT&T Indianapolis (TA-W-94,578B), and that AT&T's Assistant Vice President - Senior Legal Counsel, Atlanta, Georgia (herein referred to as "AT&T AVP-SLC #2"), would be the appropriate contact to provide information directly to the Department about AT&T Syracuse (TA-W-94,578C) and AT&T Meriden (TA-W-94,578D). AR39. In its initial petition filing, the CWA identified AT&T AVP-SLC #1 as the official that would be familiar with employment, job functions, and sales or production at each job location and be able to provide such information to the Department. AR4.

The Department coordinated with AT&T AVP-SLC #1-2 to collect certified information via five responses to the Office of Management and Budget (OMB) Control Number: 1205-0342 – ETA-9042, Business Data Request (BDR) form; one for each of the five subject locations. AT&T officials affirmed, under penalty of law (19 U.S.C. § 2316), that the information provided in response to the initial questions posed by the Department was true, correct,

and complete.

BDR responses were provided by AT&T's Center Sales Manager – Acquisition, Springfield, Missouri, for AT&T Appleton (TA-W-94,578A), AR52-57; AT&T's Center Sales Manager – Acquisition, Southfield, Michigan, for AT&T Indianapolis (TA-W-94,578B), AR62-67; AT&T's Center Sales Manager – Retention, Kalamazoo, Michigan, for AT&T Kalamazoo (TA-W-94,578), AR71-76; AT&T's AVP Network Services, Middletown, New Jersey, for AT&T Meriden (TA-W-94,578D), AR91-98; and AT&T's Director – Call Center, Albany, New York, for AT&T Syracuse (TA-W-94,578C), AR105-112.

**5)** *Assessment of Workers' Evidence Regarding AT&T Job Losses*

On the first remand, the Department reviewed the CWA's "AT&T 2018 Jobs Report" provided during the initial investigation, AR20; and additional anecdotal information provided by the petitioner during the initial investigation, AR129-130.

Workers' evidence consisted of the jobs report as well as specific allegations regarding work being performed at a Jamaica call center. The CWA "AT&T 2018 Jobs Report" submitted by the petitioner describes job losses suffered by AT&T employees throughout the U.S. and presents a general assertion that AT&T work has been and continues to be moved to non-U.S. locations. The report also reports the closure of numerous U.S. call centers in various U.S. locations, including AT&T Indianapolis, AT&T Kalamazoo, and AT&T Appleton, and implies that decisions to route

calls to third-party call centers outside the U.S. may lead to reduced call volume for U.S. call centers. The report also describes an AT&T call center opened in Mexico. AR18-25. The petitioner had submitted additional anecdotal information during the initial investigation, implying that workers in Jamaica were performing the same type of call center work as workers at AT&T Appleton. AR129-130. The general allegations in CWA's AT&T 2018 Jobs Report and the specific allegation about call center work in Jamaica formed the basis of additional investigation questions to which AT&T officials were required to respond. The noncertified information provided by AT&T officials in response to the additional investigation questions are summarized below. During the initial investigation, the Department asked AT&T AVP-SLC #1-2 to provide further clarification about whether the activities performed by workers at AT&T Kalamazoo (TA-W-94,578), AT&T Appleton (TA-W-94,578A), AT&T Indianapolis (TA-W-94,578B), AT&T Syracuse (TA-W-94,578C), and AT&T Meriden (TA-W-94,578D) were being shifted to a foreign country or acquired from a foreign country. AR114-115. On reconsideration, the Department asked AT&T AVP-SLC #1 for further clarification about whether the activities performed by workers at AT&T Appleton (TA-W-94,578A) were being shifted to a foreign country or acquired from a foreign country. AR292-293.

The Department also asked AT&T for further clarification

about the nature of work performed at the five subject locations within the context of AT&T's global operations. AR292-293. The Department asked AT&T AVP-SLC #1-2 for further clarification about the nature of work performed at AT&T Kalamazoo (TA-W-94,578), AT&T Appleton (TA-W-94,578A), and AT&T Indianapolis (TA-W-94,578B), AR305-306;  AT&T Meriden (TA-W-94,578D) and AT&T Syracuse (TA-W-94,578C), AR317-319;  and again about AT&T Kalamazoo (TA-W-94,578). AR326-327.

The Department determined in the Negative Determination on Remand that the general assertions in the AT&T 2018 Jobs Report "did not include specific evidence or make specific claims that the work of the locations in question moved to or was acquired from a foreign country." The anecdotal statements submitted by the Petitioner about an AT&T worker in Jamaica lacked specific and relevant information regarding any of the five subject locations and were not sufficient to put the specific certified information provided by AT&T into question. The certified information the Department relied upon was further corroborated and reinforced by AT&T responses that were not certified.

### 6) Identification of Certified Information Relied Upon

Through the collection of information via the OMB Control Number: 1205-0342 – ETA-9042, BDR form, AT&T officials affirmed, under penalty of law (19 U.S.C. § 2316), that the information provided in response to the initial questions posed by the

Department was true, correct, and complete. AT&T AVP-SLC #1-2 submitted this certified information to the Department during the initial investigation.

AT&T's Center Sales Manager – Acquisition (Missouri), certified:

- Information about the activities performed by workers at AT&T Appleton (TA-W-94,578A), AR52, 54;

- That AT&T had not shifted to a foreign country, or acquired from a foreign country, services like or directly competitive with the activities performed by workers at AT&T Appleton (TA-W-94,578A), AR53;

- That AT&T had not imported services like or directly competitive to the activities performed by workers at AT&T Appleton (TA-W-94,578A), AR54; and

- That AT&T AVP-SLC #1 was the appropriate representative of AT&T for the Department to contact with follow-up questions, AR57.

AT&T's Center Sales Manager – Acquisition (Michigan), certified:

- Information about the activities performed by workers at AT&T Indianapolis (TA-W-94,578B), AR62, 64;

- That AT&T had not shifted to a foreign country, or acquired from a foreign country, services like or

directly competitive with the activities performed by workers at AT&T Indianapolis (TA-W-94,578B), AR63;

- That AT&T had not imported services like or directly competitive to the activities performed by workers at AT&T Indianapolis (TA-W-94,578B), AR64; and

- That AT&T AVP-SLC #1 was the appropriate representative of AT&T for the Department to contact with follow-up questions, AR67.

AT&T's Center Sales Manager – Retention (Michigan), certified:

- Information about the activities performed by workers at AT&T Kalamazoo (TA-W-94,578), AR71-72;

- That AT&T had not imported services like or directly competitive to the activities performed by workers at AT&T Kalamazoo (TA-W-94,578), AR72;

- That AT&T had not shifted to a foreign country, or acquired from a foreign country, services like or directly competitive with the activities performed by workers at AT&T Kalamazoo (TA-W-94,578), AR73; and

- That AT&T AVP-SLC #1 was the appropriate representative of AT&T for the Department to contact with follow-up questions, AR76.

AT&T's AVP Network Services (New Jersey), certified:

- Information about the activities performed by workers at AT&T Meriden (TA-W-94,578D), AR91, 94;

- That AT&T had not shifted to a foreign country, or acquired from a foreign country, services like or directly competitive with the activities performed by workers at AT&T Meriden (TA-W-94,578D), AR92;

- That AT&T had not imported services like or directly competitive to the activities performed by workers at AT&T Meriden (TA-W-94,578D), AR94; and

- That AT&T AVP-SLC #2 was the appropriate representative of AT&T for the Department to contact with follow-up questions, AR98.

AT&T's Director – Call Center (New York), certified:

- Information about the activities performed by workers at AT&T Syracuse (TA-W-94,578C), AR105, 108;

- That AT&T had not shifted to a foreign country, or acquired from a foreign country, services like or directly competitive with the activities performed by workers at AT&T Syracuse (TA-W-94,578C), AR106;

- That AT&T had not imported services like or directly competitive to the activities performed by workers at AT&T Syracuse (TA-W-94,578C), AR108; and

- That AT&T AVP-SLC #2 was the appropriate representative

of AT&T for the Department to contact with follow-up questions, AR112.

The certified information collected from AT&T during the initial investigation established that the worker group eligibility criteria set forth in Section 222 of the Act, 19 U.S.C. § 2272, were not met. However, based upon information submitted by Petitioner and to confirm accuracy and completeness of all BDR responses, the Department collected additional noncertified information from AT&T AVP-SLC #1-2 for clarification purposes, during both the initial investigation and the reconsideration.

**7) *Identification of Noncertified Information Collected***

The Department's follow-up questions to AT&T were based on and attempted to uncover any specific detail relating to the allegations in the Petitioner's jobs report and anecdotal worker information.

In emails, AT&T AVP-SLC #1 provided additional clarifications:

- That the nature of the work performed by workers at AT&T Kalamazoo (TA-W-94,578), AT&T Appleton (TA-W-94,578A), and AT&T Indianapolis (TA-W-94,578B) was distinct from work performed outside the U.S., AR122-124;

- That work of the type performed by workers at AT&T Kalamazoo (TA-W-94,578) is only supplied within the U.S., AR250-253;

- That work of the type performed by workers at AT&T Appleton (TA-W-94,578A) is only supplied within the U.S., AR254-257;

- That work of the type performed by workers at AT&T Indianapolis (TA-W-94,578B) is only supplied within the U.S., AR258-261;

- That work of the type performed by workers at AT&T Kalamazoo (TA-W-94,578), AT&T Appleton (TA-W-94,578A), and AT&T Indianapolis (TA-W-94,578B) was not moved to non-U.S. locations, AR300-303;

- That work of the type performed by workers at AT&T Kalamazoo (TA-W-94,578), AT&T Appleton (TA-W-94,578A), and AT&T Indianapolis (TA-W-94,578B) is distinct from the type of work performed in non-U.S. locations, AR307-311; and

- About the nature of work performed by workers at AT&T Kalamazoo (TA-W-94,578), AT&T Appleton (TA-W-94,578A), and AT&T Indianapolis (TA-W-94,578B), AR325.

In emails, AT&T AVP-SLC #2 provided additional clarifications:

- About the nature of work performed by workers at AT&T Meriden (TA-W-94,578D) and AT&T Syracuse (TA-W-94,578C), AR125-128;

- That work of the type performed by workers at AT&T Meriden (TA-W-94,578D) is only supplied within the U.S., AR266-267;

- That work of the type performed by workers at AT&T Syracuse (TA-W-94,578C) is only supplied within the U.S., AR272-273;

- That work of the type performed by workers at AT&T Syracuse (TA-W-94,578C) and AT&T Meriden (TA-W-94,578D) is distinct from the type of work performed in non-U.S. locations, AR295-297;

- About the nature of work performed by workers at AT&T Meriden (TA-W-94,578D), AR341-342; and

- About the nature of work performed by workers at AT&T Syracuse (TA-W-94,578C), AR349-350.

In each instance, the additional information provided in the noncertified AT&T responses corroborated and reinforced the certified information the Department had collected during the initial investigation.

### 8) *Reasonable Basis for Relying on Noncertified Information*

The initial remand determination finding that the noncertified information upon which it relied, i.e., the written statements provided to the Department by AT&T AVP-SLC #1-2 throughout the initial and reconsideration investigations

regarding AT&T's own business operations, was accurate and complete, was based upon the following premise: the firm is in the best position to provide accurate, complete, and current information regarding its own operations and business decisions; and the responding officials each had access to the firm's records and to other officials with direct knowledge of the firm's operations and business decisions, including information about the circumstances of worker separations that the petitioner does not have. Furthermore, at the start of the investigation process, AT&T AVP-SLC #1 was made aware of the statutory requirement to submit all information requested by the Department for official purposes relating to workers at AT&T Kalamazoo since the Department's letter informing AT&T of the investigation and transmitting the BDR form was directed to AT&T AVP-SLC #1 by name. The letter states that "[t]he requested information is considered vital to the investigation" and used to determine whether statutory criteria are met, and advises of the Secretary's authority to obtain this information by subpoena if necessary. (TA-W-94,578), AR26-35; AT&T Appleton (TA-W-94,578A), AR49-50; and AT&T Indianapolis (TA-W-94,578B), AR59-60.

AT&T AVP-SLC #1 demonstrated an active knowledge and understanding of the statutory requirement of Section 222(d)(3)(B) of the Trade Act that firms provide information requested by the Department in TAA investigations, and of the requirement to provide

accurate BDR responses to the Department by identifying and arranging for completion of the BDR form for each of the three AT&T locations for which he was coordinating responses by AT&T officials who were specifically knowledgeable regarding those respective sites. The Department considered this diligent effort to seek out the best official to certify information on behalf of AT&T, which, together with the factors noted above, contributed to the Department's determination that it is reasonable to conclude that information that AT&T AVP-SLC #1 provided later in the investigation was accurate and complete without certification. In addition, by submitting the BDR for AT&T Appleton (TA-W-94,578A), AR48, which had been signed by AT&T's Center Sales Manager – Acquisition (Missouri), AR57; the BDR for AT&T Indianapolis (TA-W-94,578B), AR58, which had been signed by AT&T's Center Sales Manager – Acquisition (Michigan), AR67; and the BDR for AT&T Kalamazoo (TA-W-94,578), AR68, which had been signed by AT&T's Center Sales Manager – Retention (Michigan), AR76, to the Department, AT&T AVP-SLC #1 further demonstrated knowledge of the requirement to provide accurate and complete information.

For AT&T AVP-SLC #2 the Department's initial letter was not formally directed to him but was specifically redirected to him personally after he was identified by AT&T AVP-SLC #1 as the appropriate contact. AR 43-44. AT&T AVP-SLC #2 also demonstrated knowledge of the statutory requirement to provide all information

requested by the Department and the necessity to ensure the veracity of the BDR responses provided to the Department by identifying and arranging for completion of the BDR form for each of the two AT&T locations for which he was coordinating responses by AT&T officials specifically knowledgeable regarding those sites and therefore best able to provide accurate and complete information, and by submitting the BDR for AT&T Meriden (TA-W-94,578D), AR85, which had been signed by AT&T's AVP Network Services (New Jersey), AR98; and the BDR for AT&T Syracuse (TA-W-94,578C), AR99, which had been signed by AT&T's Director – Call Center (New York), AR112.

Given this knowledge, AT&T AVP-SLC #1-2's responses to follow-up questions based on information contained in any of the BDRs could reasonably be expected to be complete and accurate as well. The statutory requirement to provide complete and accurate information subject to penalty of law applies to all responses to the Department's investigations.

It is reasonable to take notice of the role of both AT&T AVP-SLC #1-#2 as in-house legal counsel for AT&T. AR39-40, 85. In working with other AT&T officials who would sign the BDR certification, their position may reasonably be assumed to include reviewing the BDR forms including the Affirmation and advising the officials of the import of the certification requirement and the statutory provisions, including the Federal penalties for

providing false information. The positions and role of the officials within the firm contribute to the assessment of reliability of the information the officials provide

The firm official certifying a BDR questionnaire response may but is not required to have direct knowledge of the information provided they have access to and can obtain the information from other officials of the firm. As was the case in the present matter, the responding and/or certifying officials may be familiar with TAA worker petition investigations and firm questionnaires due to experience with previous petition investigations. II-1-3.

In order to clarify certified responses to a questionnaire and to follow up with additional questions and requests that are not part of the questionnaire, the Department may seek additional information from authorized firm officials. An official who signed the BDR certification has actual notice of the legal requirement to provide accurate and complete information, and has actual notice that there are penalties for not providing information that is accurate and complete. ARI-5 When the certifying official also provides follow-up information, i.e., "other information obtained" under 222(d)(3)(A)(ii) of the Trade Act, that official may be considered a more reliable source of accurate and complete information because they have actual notice of the legal requirement and the potential penalties. The information is not required to be certified when there is a reasonable basis for

determining that such information is accurate and complete without being certified. If, however, there is not sufficient information to constitute a reasonable basis or there is information that creates any question about the accuracy and completeness of the "other information", the Department seeks certification of such "other information". II-1-3.

During the initial investigation, AT&T AVP-SLC #1 requested two extensions of the due date for AT&T to return the BDR forms, based on the availability of the appropriate subject matter experts to certify the information that would be provided to the Department on the BDR forms. AR79-80. Such requests indicate that AT&T was adhering to a deliberate process for vetting the accuracy and completeness of information it submits to the Department. It is reasonable to infer that such deliberate vetting is a customary business practice that also would have been followed by AT&T AVP-SLC #1-2 in preparing the responses to the Department's additional information requests that were not required to be certified.

Based on the certified information provided by AT&T officials, which in itself supported a negative determination, the subsequent noncertified but corroborating information provided by AT&T officials in response to the Department's requests for clarification, and the determination that the record reflects sufficient and reasonable basis to find the noncertified information provided by AT&T officials to be accurate and

complete, the Department concluded in all prior determinations, including the first remand determination, that with respect to the five subject locations, job responsibilities continued to be performed at other U.S. locations and had not been shifted to a foreign country or acquired from a foreign country, and that the other worker group eligibility criteria set forth in Section 222 of the Act, 19 U.S.C. § 2272, were not met either. With the support of the additional reasonable basis set out with this second remand the Department determines again that a reasonable basis is present for determining that such noncertified information is accurate and complete without being certified.

### 9) Second Remand Summary

With respect to Section 222(a)(2)(A)(ii) of the Act, the investigation(s) revealed that imports of call center, billing, or network operations services did not increase during the period relevant to the investigation (January 2017 to February 2019), nor did imports of like or directly competitive services.

With respect to Section 222(a)(2)(B) of the Act, the investigation(s) revealed that the workers' firm did not shift the supply of call center, billing, or network operations services, or like or directly competitive services, to a foreign country or acquire call center, billing, or network operations services or like or directly competitive services from a foreign country. Work at the five subject locations was consolidated into other

call centers in the United States.

The Department is not required to address Section 222(a)(2)(B)(ii) of the Act ("contributed importantly") because no shift in services, or acquisition of services, was revealed by the investigation.

With respect to Section 222(b)(2) of the Act, the investigation(s) revealed that AT&T is not a Supplier and does not act as a Downstream Producer to a firm that employed a group of workers who received a certification of eligibility under Section 222(a) of the Act, 19 U.S.C. § 2272(a).

Finally, the group eligibility requirements under Section 222(e) of the Act, are not satisfied since the workers' firm has not been publicly identified by name by the International Trade Commission as a member of a domestic industry in an investigation resulting in an affirmative finding of serious injury, market disruption, or material injury, or threat thereof. AR153.

10)    *Second Remand Conclusion*

After careful review of the facts obtained in both the initial investigation and the reconsideration investigation, as reflected in the administrative record, I determine that the requirements of Section 222 of the Act, 19 U.S.C. § 2272, have not been met and affirm the previous notices of negative determination of eligibility of workers of Michigan Bell Telephone Company, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc.,

Digital, Retail, & Care, Uverse, Customer Loyalty Group, Retention Center, Kalamazoo, Michigan (TA-W-94,578) engaged in activities related to the supply of call center operations support services; Wisconsin Bell, Inc., a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Appleton, Wisconsin (TA-W-94,578A) engaged in activities related to the supply of call center operations support services; Indiana Bell Telephone Company Incorporated, a direct wholly-owned subsidiary of AT&T Teleholdings, Inc., Digital, Retail, & Care, Uverse, Sales Department, Acquisition Center, Indianapolis, Indiana (TA-W-94,578B) engaged in activities related to the supply of call center operations support services; AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., AT&T Finance Billing Operations, AT&T Global Billing Resolution Team, Syracuse, New York (TA-W-94,578C) engaged in activities related to the supply of billing support services; and AT&T Services, Inc., a subsidiary of AT&T, Inc. & AT&T Teleholdings, Inc., Network Operation Center, 911 Network Operations Center, Wholesale Signaling Network Operations Center, and VOIP2TDM Network Operations Center, Meriden, Connecticut (TA-W-94,578D) engaged in activities related

to the supply of network operations center support services, to apply for adjustment assistance, in accordance with Section 223 of the Act, 19 U.S.C. § 2273.

Signed in Washington, D.C. this 17th day of March, 2022

HOPE D. KINGLOCK
Certifying Officer, Office of
Trade Adjustment Assistance