# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

———————————————————————— :

FORMER EMPLOYEES OF AT&T     :
SERVICES, INC., THROUGH       :
COMMUNICATIONS WORKERS OF  :
AMERICA LOCAL 4123,          :
                                      :
        Plaintiffs,          :
                                        :
        v.              :    Court No. 20-00075
                                        :
U.S. SECRETARY OF LABOR,      :
                                        :
        Defendant.        :

————————————————————————:

## PLAINTIFFS' COMMENTS ON NOTICE OF NEGATIVE DETERMINATION ON SECOND REMAND

Bernd G. Janzen
Devin S. Sikes
Tebsy Paul
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel to Plaintiffs*

May 18, 2022

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ...............................................................i

GLOSSARY ............................................................................iv

INTRODUCTION......................................................................1

BACKGROUND ......................................................................2
    I.    The Court's January 5, 2022 Opinion....................................2
    II.   Labor's Second Remand Results............................................3

SUMMARY OF THE ARGUMENT .........................................6

STANDARD OF REVIEW.......................................................7

ARGUMENT ...........................................................................8
    I.    Labor Fails to Provide a Reasonable Basis for its
        Reliance on Noncertified Evidence in the Second
        Remand Results .....................................................................8
        A.    The "Reasonable Basis" Requirement Acts as a
                Bulwark Against Labor Determinations Based on
                Inaccurate and Incomplete Evidence ...........................9
        B.    Labor Advances Wholly Arbitrary, Unlawful, and
                Unsupported Reasons to Defend Its Reliance on
                Noncertified Evidence .................................................11

CONCLUSION ......................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. U.S. Sec'y of Agric.*,
    469 F. Supp. 2d 1300 (Ct. Int'l Trade 2006)..........................................8

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
    419 U.S. 281 (1974)..........................................................................7

*Civil Aeronautics Bd. v. Delta Air Lines, Inc.*,
    367 U.S. 316 (1961)..................................................................1, 18

*Commc'ns Workers of Am. Local 4123, on behalf of Former*
    *Emps. of AT&T Servs., Inc. v. U.S. Sec'y of Labor*,
    518 F. Supp. 3d 1342 (Ct. Int'l Trade 2021)..........................................3

*Commc'ns Workers of Am. Local 4123, on behalf of Former*
    *Emps. of AT&T Servs., Inc. v. U.S. Sec'y of Labor*,
    No. 20-00075, 2022 WL 43292 (Ct. Int'l Trade Jan. 5,
    2022)................................................................................... passim

*CS Wind Vietnam Co., Ltd. v. United States*,
    832 F.3d 1367 (Fed. Cir. 2016) ...................................................7, 17

*Elmo Div. of Drive-X Co. v. Dixon*,
    348 F.2d 342 (D.C. Cir. 1965) ...........................................................1

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016)..........................................................................7

*Former Emps. of Geokinetics, Inc. v. U.S. Sec'y of Labor*,
    290 F. Supp. 3d 1348 (Ct. Int'l Trade 2018)..........................................8

*Garcia v. United States*,
    469 U.S. 70 (1984)..........................................................................10

*Joint Anti-Fascist Refugee Committee v. McGrath*,
    341 U.S. 123 (1951)........................................................................18

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State*
    *Farm Mut. Automobile Ins. Co.,*
    463 U.S. 29 (1983) ................................................................. 8

*NLRB v. Columbian Enameling & Stamping Co.,*
    306 U.S. 292 (1939) ............................................................... 7

## Statutes

5 U.S.C. § 706(2)(A) ................................................................ 7

19 U.S.C. § 2272(a)(2)(B)(i) ..................................................... 2

19 U.S.C. § 2272(d)(3)(A)(ii) ............................... 1, 3, 9, 11, 15

19 U.S.C. § 2272(d)(3)(B) ...................................................... 12

19 U.S.C. § 2321 ................................................................... 12

19 U.S.C. § 2395(b) ................................................................ 7

## Legislative Materials

American Recovery and Reinvestment Act of 2009, Pub. L.
    No. 111-5, 123 Stat. 115 (2009) ..................................... 9, 10

H.R. Rep. No. 111-16 (2009) (Conf. Rep.) ......................... 10, 18

## Other Authorities

ROBERT A. KATZMANN, JUDGING STATUTES (2014) .................................. 10

# GLOSSARY

| ACRONYM | FULL PHRASE |
|---------|-------------|
| APA | Administrative Procedure Act |
| AT&T | AT&T Services, Inc. |
| Labor | U.S. Department of Labor |
| TAA | Trade Adjustment Assistance |

## <u>INTRODUCTION</u>

"Procedural safeguards are often cumbersome in a relative sense, but short cuts and cutting of procedural corners by a regulatory body are pregnant with mischief." *Elmo Div. of Drive-X Co. v. Dixon*, 348 F.2d 342, 348 n.12 (D.C. Cir. 1965).  Similar to other federal agencies, Labor "must bow to the statutory procedure and cannot take short cuts."  *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 329 n.12 (1961).

Labor has once again unlawfully dodged statutory procedure. Congress made it clear that Labor may rely on noncertified evidence in making TAA determinations *only* if it "has a reasonable basis for determining that such information is accurate and complete without being certified."  19 U.S.C. § 2272(d)(3)(A)(ii); *accord Commc'ns Workers of Am. Local 4123, on behalf of Former Emps. of AT&T Servs., Inc. v. U.S. Sec'y of Labor*, No. 20-00075, 2022 WL 43292, at *4 (Ct. Int'l Trade Jan. 5, 2022) ("*Local 4123 II*").  In its Negative Determination on Second Remand ("Second Remand Results"), Labor confirmed that it relied on noncertified evidence to deny Plaintiffs eligibility for TAA.  ECF 49 at

18.[1]  In support of its decision to rely on such noncertified evidence, however, Labor offers a series of explanations that run counter to *Local 4123 II* and that otherwise have no basis in law or fact.  The Court must therefore remand anew.

## BACKGROUND

### I.    The Court's January 5, 2022 Opinion

This appeal concerns whether Labor properly concluded that AT&T had not (1) shifted the supply of call center services, billing support services, or network operations center support services to a foreign country, or (2) contracted to have such services supplied by a foreign country.  *See* 19 U.S.C. § 2272(a)(2)(B)(i).  In four separate determinations, Labor has concluded that no such changes in supply occurred, such that Plaintiffs do not qualify for TAA.  *See* Pub. A.R. 154-62, Conf. A.R. 141-53 (initial    determination);[2]  Pub.  A.R.  382-87,  Conf.  A.R.  362-81 (reconsideration determination); ECF 37 (First Remand Results); ECF 49 (Second Remand Results).  The Court has rejected each of the three Labor

---

[1] Labor did not number the pages of its Second Remand Results. ECF 49. Thus, for citation purposes, Plaintiffs rely on the page numbers assigned by ECF that appear in the upper right-hand corner of the submission.

[2] "Pub. A.R. ___" refers to pages in the public version of the administrative record (ECF 15, 52), whereas "Conf. A.R. ___" refers to pages in the confidential version of the administrative record (ECF 16).

determinations that it has reviewed to date.  *See Commc'ns Workers of Am. Local 4123, on behalf of Former Emps. of AT&T Servs., Inc. v. U.S. Sec'y of Labor*, 518 F. Supp. 3d 1342 (Ct. Int'l Trade 2021) ("*Local 4123 I*") (addressing initial and reconsideration determinations); *Local 4123 II*, 2022 WL 43292, at *8 (addressing First Remand Results).

In January 2022, the Court remanded Labor's First Remand Results "because Labor has disregarded 19 U.S.C. § 2272(d)(3)(A)(ii) and the court's remand order."  *Local 4123 II*, 2022 WL 43292, at *8.  In reaching that conclusion, the Court underscored that, when Labor relies on noncertified evidence, it must "expressly find that it has a reasonable basis for determining the accuracy and completeness of such information and to explain the basis for that finding." *Id.* at *4 (quoting *Local 4123 I*, 518 F. Supp. 3d at 1355).   The Court ordered Labor to either (1) "reasonably explain why it finds th{e} noncertified evidence accurate and complete," or (2) "direct AT&T to certify to the relevant evidence{.}" *Id.* at *8.

## II.   **Labor's Second Remand Results**

Labor submitted its Second Remand Results to the Court on March 17, 2022.  ECF 49.  In its Second Remand Results, Labor confirms that it

3

relied on both certified and noncertified evidence to reach a negative determination on second remand.  *See generally id.* at 14-26; *see also id*. at 20 (acknowledging that it "relied" on "noncertified information").

Labor divides its Second Remand Results into five main parts. First, Labor provides an overview of the operative legal criteria for TAA. *Id.* at 2-5.  Second, Labor discusses prior developments in the case.  *Id*. at 5-14.   Third, Labor identifies the certified evidence included in five business data request ("BDR") responses that undergird its analysis.  *Id.* at 14-18.  Fourth, Labor identifies the noncertified evidence on which it relied in its analysis.  *Id*. at 18-26.  Fifth, Labor summarizes its findings and announces its conclusions, largely using conclusory, boilerplate language that does not address whether Labor reasonably relied on the noncertified evidence.  *Id*. at 26-29.

With respect to the noncertified evidence, Labor acknowledges that, "based upon information submitted {on behalf of Plaintiffs} and to confirm accuracy and completeness of all BDR responses," Labor "collected additional noncertified evidence from" two AT&T officials "for clarification purposes."  *Id.* at 18; *accord id*. (stating that it raised "follow-up questions {with} AT&T" to "uncover any specific detail relating to the

allegations in {Plaintiffs'} jobs report and anecdotal worker information"). Labor identifies these officials – both of whom had the title "Assistant Vice President – Senior Legal Counsel" – as "AT&T AVP-SLC #1" and "AT&T AVP-SLC #2." *Id.* at 11.  After summarizing the noncertified evidence, Labor posits that "the additional information provided in the noncertified AT&T responses corroborated and reinforced the certified information {Labor} had collected during the initial investigation." *Id.* at 20.

To comport with the Court's remand instructions, Labor offers several reasons in support of its position that it had a reasonable basis to rely on noncertified evidence. *Id.* at 20-26.  Nearly all of these reasons rest on the unsupported premise that Labor properly treated AT&T AVP-SLC #1 and #2 as conduits of accuracy and completeness merely because of their role in facilitating the collection and submission of both certified and noncertified evidence. *Id.*  Labor concludes that establishing accuracy and completeness through such vicarious means provided it with reasonable grounds to rely on the noncertified evidence. *See id.*  Labor also recycles other reasons that the Court rejected in *Local 4123 II*. *Id.*  In view of the certified and noncertified evidence, and its belief

that it had a reasonable basis to rely on noncertified evidence, Labor once again reached a negative determination as to Plaintiffs' eligibility for TAA. *Id.* at 25-26. Notably, Labor did not discuss any efforts to have AT&T certify the noncertified evidence. *See generally id.*

## SUMMARY OF THE ARGUMENT

Labor faced a straightforward task on remand. It could either obtain a certification as to noncertified evidence or explain why it reasonably relied on noncertified evidence. Labor forewent a certification and instead attempted to articulate why it had a reasonable basis to rely on noncertified evidence. Labor's explanation fails, however, because it rests on the unsupported and unlawful theory that Labor may reasonably rely on noncertified evidence if the same company officials participate in the collection and submission of both certified and noncertified evidence. Regardless which company officials collect and submit noncertified information, such information remains exactly that – noncertified.

Labor compounds its error in two ways. First, Labor raises several other grounds that lack legal and record support. Second, nearly all of the reasons that Labor offers in support of its Second Remand Results

run counter to *Local 4123 II*.  The Court therefore has no choice but to remand anew.

## **STANDARD OF REVIEW**

The Court reviews Labor's fact-findings for "substantial evidence." 19 U.S.C. § 2395(b).  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion{.}"  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) (cleaned up).

Under the APA, the Court may separately set aside a Labor decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Labor acts arbitrarily and therefore unlawfully when it fails to provide "a reasoned basis" for its choices. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).  Labor has a reasoned basis for its choices when it provides an "A-to-Z explanation" grounded in "evidence-based factual findings."  *CS Wind Vietnam Co., Ltd. v. United States*, 832 F.3d 1367, 1377 (Fed. Cir. 2016).  Proffering "conclusory statements," however, will not do.  *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016).

7

Instead, Labor "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up).

Finally, the Court also reviews Labor's remand determination "for compliance with the court's remand order." *Former Emps. of Geokinetics, Inc. v. U.S. Sec'y of Labor*, 290 F. Supp. 3d 1348, 1354 (Ct. Int'l Trade 2018) (cleaned up).  Labor's failure to comport with the Court's remand order provides grounds for another remand.  *See, e.g.*, *Anderson v. U.S. Sec'y of Agric.*, 469 F. Supp. 2d 1300, 1301 (Ct. Int'l Trade 2006).

## ARGUMENT

### I.  Labor Fails to Provide a Reasonable Basis for its Reliance on Noncertified Evidence in the Second Remand Results

In *Local 4123 II*, the Court ordered Labor to either (1) "reasonably explain why it finds th{e} noncertified evidence accurate and complete," or (2) "direct AT&T to certify to the relevant evidence." *Local 4123 II*, 2022 WL 43292, at *8.  Faced with these options, Labor chose the first and attempted to provide a reasonable basis for its decision to rely on noncertified evidence. *See* ECF 49 at 18-26.  In so doing, however, Labor

simply repackages the same reasons and legal theories that the Court has already rejected.  Labor compounds that error by offering other reasons that lack evidence-based support.

## A.   The "Reasonable Basis" Requirement Acts as a Bulwark Against Labor Determinations Based on Inaccurate and Incomplete Evidence

Against the backdrop of the Great Recession, Congress passed the American Recovery and Reinvestment Act of 2009.  Pub. L. No. 111-5, 123 Stat. 115 (2009).  In that legislation, Congress limited Labor's ability to rely on noncertified evidence in making TAA determinations.  Congress provided that Labor could rely on such information only when it "has a reasonable basis for determining that such information is accurate and complete without being certified." *Id.* at Div. B, Title I, § 1801(c), 123 Stat. at 369.  Congress codified this obligation in 19 U.S.C. § 2272(d)(3)(A)(ii).

Mere days before it enacted this procedural safeguard in 19 U.S.C. § 2272(d)(3)(A)(ii), Congress made clear why it had done so:

> The Conferees are aware of concerns that {Labor} may rely on inaccurate information in making its determinations, including when denying certification of petitions.  The provision addresses these concerns by requiring {Labor} to obtain certifications of all information obtained from a firm or customer through questionnaires as well as other information from a firm or customer that {Labor} relies upon in making a determination under section 223, unless {Labor} has a

9

> reasonable basis for determining that the information is accurate and complete.

H.R. Rep. No. 111-16, at 657 (2009) (Conf. Rep.);[3] *see id.* at 655 (discussing inclusion of requirement in the legislation). Thus, to guard against decisions based on faulty evidence, Congress placed a premium on Labor determinations rooted in accurate and complete information. *See id.* at 657; *accord Garcia v. United States*, 469 U.S. 70, 76 (1984) ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." (cleaned up)); ROBERT A. KATZMANN, JUDGING STATUTES 54 (2014) ("Conference committee reports . . . should sit at the top of authority.").

---

[3] Congress issued the Conference Report on February 12, 2009 and passed the American Recovery and Reinvestment Act of 2009 five days later on February 17, 2009. *See* Pub. L. No. 111-5, 123 Stat. 115 (2009); H.R. Rep. No. 111-16 (2009) (Conf. Rep.).

**B.    <u>Labor Advances Wholly Arbitrary, Unlawful, and Unsupported Reasons to Defend Its Reliance on Noncertified Evidence</u>**

In its attempt to comport with *Local 4123 II*, Labor offers several reasons why it reasonably relied on the noncertified evidence submitted by AT&T.  None of those reasons holds water.  As a result, Labor has once again unlawfully skirted the statutory procedure mandated by 19 U.S.C. § 2272(d)(3)(A)(ii).

Labor starts with the argument that it reasonably relied on noncertified evidence because AT&T

> is in the best position to provide accurate, complete, and current information regarding its own operations and business decisions; and the responding officials each had access to the firm's records and to other officials with direct knowledge of the firm's operations and business decisions, including information about the circumstances of worker separations that the petitioner does not have.

ECF 49 at 21.  *Local 4123 II* already rejected this rationale, however, holding that although "AT&T's personnel are in the best position to know about their company's operations and business decisions and have the best access to records," "mere knowledge is not itself a reason to presume that the response is truthful, which is presumably why Congress chose to

impose the certification requirement in the first place." *Local 4123 II*, 2022 WL 43292, at *6.

Labor alleges next that it could reasonably rely on the noncertified evidence because, "at the start of the investigation process, AT&T AVP-SLC #1 was made aware of the statutory requirement to submit all information requested by {Labor}" and Labor stated that it could "obtain this information by subpoena if necessary." ECF 49 at 21 (discussing AT&T AVP-SLC #1's "active knowledge" of requirement to provide information). This argument suffers from at least three flaws. For starters, Labor does not even bother to identify the statutory requirement at issue.[4] *See id*. In any event, neither a requirement to submit information nor the threat of subpoena says anything about the veracity, accuracy, and completeness of the information submitted. Even if Labor's *non sequitur* bore some relevance, AT&T AVP-SLC #1's "mere knowledge" of those measures "is not itself a reason to presume that the response is truthful." *Local 4123 II*, 2022 WL 43292, at *6.

---

[4] Labor appears to make an oblique reference to 19 U.S.C. §§ 2272(d)(3)(B) and 2321. *See, e.g.*, Pub. A.R. 49.

Labor makes the related argument that it reasonably relied on noncertified evidence because "AT&T AVP-SLC #1 demonstrated an active knowledge and understanding of . . . the requirement to provide accurate BDR responses{.}"  ECF 49 at 21-22.  Labor alleges that AT&T AVP-SLC #1's role in "submitting" the BDR responses also "demonstrated knowledge of the requirement to provide accurate and complete information."  *Id*. at 22.  Labor makes similar arguments as to AT&T AVP-SLC #2.  *See id*. at 22-23.  From there, Labor takes an extraordinary leap in logic to conclude that "AT&T AVP-SLC #1-2's responses to follow-up questions based on information contained in any of the BDRs could reasonably be expected to be complete and accurate as well."  *Id*. at 23.

Labor's arguments attempt to squeeze water from a stone.  As an initial matter, Labor does not define "active knowledge" or identify what record evidence affirmatively supports its theory that AT&T AVP-SLC #1 and #2 retained such knowledge at the time they submitted the noncertified evidence.  Even if Labor could identify evidence to support its undefined "active knowledge" theory, "the mere existence of a statutory obligation . . . to give truthful responses is not enough of a reason, without more, to conclude that the respondent is aware of that

13

obligation and the consequences for non-compliance." *Local 4123 II*, 2022 WL 43292, at *7. Indeed, none of the passages of the administrative record cited by Labor states that AT&T AVP-SLC #1 and #2 had any "ongoing obligation" after the submission of the BDR responses to ensure the accuracy and completeness of the noncertified evidence—instead, the passages are "completely silent about later phases of the investigation." *Id.* at *6 n.6. Put simply, "{c}ertification of {BDR} responses does not apply to noncertified information as the statute imposes a separate obligation for such information." *Id.* at *7.

Labor raises yet another spurious claim: "{i}t is reasonable to take notice of the role of both AT&T AVP-SLC #1-#2 as in-house legal counsel," and "their position may reasonably be assumed to include reviewing the BDR forms . . . and advising the officials of the import of the certification requirement and the statutory provisions, including the Federal penalties for providing false information." ECF 49 at 23-24; *see id.* at 24 ("An official who signed the BDR certification has actual notice of the legal requirement to provide accurate and complete information, and has actual notice that there are penalties for not providing information that is accurate and complete."). In fact, Labor goes so far as to assert that

AT&T AVP-SLC #1 and #2 "may be considered a more reliable source of accurate and complete information because they have actual notice of the legal requirement and the potential penalties."[5]  *Id*. at 24.

Yet, Labor cites no legal authority for the remarkable theory that an individual's mere involvement in reviewing or preparing a certified submission at one stage of a proceeding somehow confirms the accuracy and completeness of the noncertified evidence accompanying a different submission filed later in the proceeding.  Indeed, accepting Labor's theory "would effectively read § 2272(d)(3)(A) out of the statute."  *Local 4123 II*, 2022 WL 43292, at *7.  As explained above, the Court has already rejected knowledge of the BDR certification requirement and the threat of penalties as reasonable bases for treating subsequently filed noncertified evidence as accurate and complete.  *See id.* at *6-8.  The Court has no reason to chart a different course now.

---

[5] In support of this argument, Labor cites to a declaration executed by Norris Tyler III, who serves as the Administrator of the Office of TAA.  ECF 49 at 24 (citing Pub. A.R. 397-99 (ECF 52)).  The general statements in Mr. Tyler's declaration do not explain why, in view of the record facts and circumstances of this proceeding, Labor reasonably relied on noncertified evidence to reach a negative determination in its Second Remand Results.  *See* Pub. A.R. 397-99 (ECF 52).

Reintroducing a familiar thread, Labor again claims that "{t}he statutory requirement to provide complete and accurate information subject to penalty of law applies to all responses to {Labor}'s investigations." ECF 49 at 23. However, this requirement "is irrelevant for purposes of the reliability of noncertified e-mail communications." *Local 4123 II*, 2022 WL 43292, at *6 n.5.

Finally, Labor contends that it reasonably relied on the noncertified evidence because "AT&T AVP-SLC #1 requested two extensions of the due date for AT&T to return the BDR forms, based on the availability of the appropriate subject matter experts," which purportedly "indicate{s} that AT&T was adhering to a deliberate process for vetting the accuracy and completeness" of the information it submitted. ECF 49 at 25. As a result, Labor alleges that "{i}t is reasonable to infer that such deliberate vetting is a customary business practice that also would have been followed" in the collection, preparation, and submission of the noncertified evidence. *Id*.

Labor's parting argument simply grasps at straws. With respect to the evidence that Labor cites, those record passages only reveal that certain individuals were not available to sign the certifications; they do

16

not discuss at all the process taken to ensure the accuracy and completeness of the information. *See* Pub. A.R. 79-80. In fact, Labor cites absolutely no affirmative record evidence whatsoever regarding the processes that AT&T AVP-SLC #1 undertook in reviewing and preparing the BDR responses. Moreover, Labor cites no evidence that would establish that, in fact, the process undertaken by AT&T AVP-SLC #1 reflected AT&T's customary business practice. Perhaps most importantly, Labor cites no record evidence for the proposition that AT&T AVP-SLC #1 followed the same process in preparing and submitting both the certified and noncertified evidence. Labor may make reasonable, evidence-based inferences to support its determinations, but it cannot defend its decision by advancing reasons based on facts fabricated from whole cloth. *See CS Wind Vietnam*, 832 F.3d at 1377 (holding that an agency has a reasoned basis for its choices when it provides an "A-to-Z explanation" grounded in "evidence-based factual findings").

* * *

To sum it up, Labor primarily defends its use of noncertified evidence by advancing a theory of accuracy and completeness by virtue of AT&T AVP-SLC #1 and #2's mere involvement in the collection and

17

submission of *other* evidence that was certified.  Labor's theory, however, conflicts with *Local 4123 II* and the administrative record, not to mention first principles.  *Cf. Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 179 (1951) (Douglas, J., concurring) ("{S}hort-cuts may at times seem to serve noble aims; but we depreciate ourselves by indulging in them.").  As a consequence, Labor has unlawfully failed to "bow to the statutory procedure," *Civil Aeronautics Bd.*, 367 U.S. at 329 n.12, and has rendered a decision inconsistent with congressional intent, *see* H.R. Rep. No. 111-16, at 657.

## <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request that the Court vacate Labor's Second Remand Results and remand anew to Labor for further proceedings consistent with the Court's order and opinion in this matter.

Respectfully submitted,

Bernd G. Janzen
Devin S. Sikes
Tebsy Paul
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel to Plaintiffs*

May 18, 2022

## **CERTIFICATE OF COMPLIANCE**

I, Bernd G. Janzen, an attorney with Akin Gump Strauss Hauer & Feld LLP, certify that Plaintiffs' Comments on Notice of Negative Determination on Second Remand contains 3,520 words (according to the word count feature of the Microsoft Word processing program) and therefore complies with the word count limitation set forth in the Court's April 14, 2022 Scheduling Order (ECF 54).


 /s/ Bernd G. Janzen                          
Bernd G. Janzen

May 18, 2022                    *Counsel to Plaintiffs*