UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

───────────────────────────

FORMER EMPLOYEES OF
AT&T SERVICES, INC.,

     Plaintiffs,

     v.                                     Court No. 20-00075

UNITED STATES
SECRETARY OF LABOR,

     Defendant.

───────────────────────────

## ORDER

Upon consideration of the remand redetermination issued by the Secretary of Labor (Labor) pursuant to *Communications Workers of America Local 4123 ex rel. Former Employees of AT&T Corp. v. Secretary of Labor*, No. 20-00075, 2022 WL 43292 (Ct. Int'l Trade Jan. 5, 2021); plaintiffs' comments upon the remand redetermination; and defendant's reply thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
JUDGE

Dated: _____, 2022
        New York, NY

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| FORMER EMPLOYEES OF AT&T SERVICES, INC., ) ) ) ) | |
| Plaintiffs, ) | |
| v. ) | Court No. 20-00075 |
| ) | |
| UNITED STATES SECRETARY OF LABOR, ) ) ) | |
| Defendant. ) ) | |

## DEFENDANT'S REPLY TO PLAINTIFFS' COMMENTS ON THE NOTICE OF NEGATIVE DETERMINATION ON SECOND REMAND

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Assistant Director

OF COUNSEL:

TECLA A. MURPHY          ANTONIA R. SOARES
Employment and Training   Senior Trial Counsel
Legal Services          Commercial Litigation Branch
Office of the Solicitor   Civil Division
U.S. Department of Labor   Department of Justice
                        PO Box 480, Ben Franklin Station
                        Washington, DC  20044
                        antonia.soares@usdoj.gov


June 23, 2022          Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

BACKGROUND ..................................................................... 2

   I.   Statutory Framework And Labor's Practice Concerning Certification Of Company Information .................................. 2

   II.   Labor's Initial Investigation And Negative Determination ... 5

   III.   Labor's Reconsideration Investigation And Negative Determination ............................................................... 9

   IV.   Plaintiffs' Appeal And The Court's May 4, 2021 Opinion And Order ................................................................... 10

   V.   Labor's Initial Remand Redetermination And Negative Determination ............................................................... 10

   VI.   The Court's January 5, 2022 Remand Opinion And Order .. 12

   VII.   Labor's March 2022 Remand Redetermination And Negative Determination ...................................................... 14

   VIII.   The Potential Termination Of The TAA Program If Not Reauthorized Or Continued By June 30, 2022 ..................... 19

SUMMARY OF THE ARGUMENT ................................................... 22

ARGUMENT ..................................................................... 25

   I.   Standard Of Review............................................................... 25

   II.   Labor Fully Explained That It Possessed A Reasonable Basis For Determining That The Noncertified Information Was Accurate And Complete Based On Five Factors........... 26

i

III.   Labor's Interpretation Of The TAA Statute Is Entitled To
       *Chevron* Deference.................................................................. 37

       A.   Legal Standard ............................................................. 37

       B.   Labor's Interpretation Is Entitled To
            Deference Under *Chevron* Step-Two Because
            It Is Permissible............................................................. 38

IV.    Labor's Interpretation Is Entitled To
       *Skidmore* Deference.............................................................. 41

V.     The Court Is Not Authorized To Order Labor To
       Certify Plaintiffs ...................................................................... 44

       A.   The Court's Authority Under 19 U.S.C. § 2395
            Is Limited To Affirming Or Remanding Labor's
            Determinations ............................................................. 45

       B.   Court-Ordered Certification Would Violate
            28 U.S.C. § 2643(c)(2) .................................................. 48

       C.   Plaintiffs Do Not Satisfy The Statutory Criteria
            For Certification ........................................................... 50

       D.   A Stay Pending Appeal Is An Available Option .......... 52

CONCLUSION .................................................................................... 55

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*An Giang Agri. & Food Import Export Co. v. United States,*
  350 F. Supp. 2d 1162 (Ct. Int'l Trade 2004).........................................55

*BMW of North Am. LLC v. United States,*
  926 F.3d 1291 (Fed. Cir. 2019) .......................................................38, 41

*Bragdon v. Abbott,*
  524 U.S. 624 (1998).........................................................................44

*Cathedral Candle Co. v. U.S. Int'l Trade Comm'n,*
  400 F.3d 1352 (Fed. Cir. 2005)................................................ 42, 43, 45

*Cheney v. United States Dist. Court,*
  542 U.S. 367 (2004).........................................................................51

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984)..................................................................... *passim*

*Communications Workers of Am. Local 4123 ex rel. Former Emps. of
  AT&T Corp. v. Sec'y of Labor,*
  518 F. Supp. 3d 1342 (Ct. Int'l Trade 2021).........................................11

*Communications Workers of Am. Local 4123 ex rel. Former Emps. of
  AT&T Corp. v. Sec'y of Labor,*
  No. 20-00075, 2022 WL 43292 (Ct. Int'l Trade Jan. 5, 2021)...... *passim*

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938).........................................................................25

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966).........................................................................25

*Diamond Sawblades Mfrs.' Coal. v. United States,*
  34 C.I.T. 404 (2010) .......................................................................55

*Downhole Pipe & Equip., L.P. v. United States,*
   776 F.3d 1369 (Fed. Cir. 2015) ........................................................... 25

*Florida Power & Light Co. v. Lorion,*
   470 U.S. 729 (1985) .................................................................... 47, 48

*Ford Motor Co. v. United States,*
   809 F.3d 1320 (Fed. Cir. 2016) ........................................................... 42

*Former Emps. of Barry Callebout v. Chao,*
   357 F.3d 1377 (Fed. Cir. 2004) .................................................... *passim*

*Former Emps. of Hewlett-Packard Co. v. United States,*
   17 C.I.T. 980 (1993) ......................................................................... 54

*Former Emps. of Int'l Bus. Machines Corp. v. United States,*
   483 F. Supp. 2d 1284 (Ct. Int'l Trade 2007) ................................. 49, 50

*Former Emps. of Marathon Ashland Pipe Line, LLC v. Chao,*
   370 F.3d 1375 (Fed. Cir. 2004),
   *cert. denied,* 543 U.S. 1049 (2005) ............................................. *passim*

*Former Emps. of Merrill Corp. v. United States,*
   483 F. Supp. 2d 1256 (Ct. Int'l Trade 2007) ........................... 49, 50, 52

*Fresh Garlic Producers Ass'n v. United States,*
   190 F. Supp. 3d 1302 (Ct. Int'l Trade 2016) ...................................... 51

*Gilead Scis., Inc. v. Lee,*
   778 F.3d 1341 (Fed. Cir. 2015) ..................................................... 38, 39

*INS v. Ventura,*
   123 S.Ct. 353 (2002) ........................................................................ 47

*Jiaxing Bros. Fastener Co. v. United States,*
   179 F. Supp. 3d 1156 (Ct. Int'l Trade 2016) ...................................... 56

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)................................................................46

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..........................................................54, 55

*Long v. Soc. Sec. Admin.*,
    635 F.3d 526 (Fed. Cir. 2011)..............................................39

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015).........................25

*Prestonback v. United States*,
    965 F.3d 1363 (Fed. Cir. 2020)..............................................45

*Qingdao Sea-Line Trading Co. v. United States*,
    766 F.3d 1378 (Fed. Cir. 2014)..............................................37

*Regions Hosp. v. Shalala*,
    522 U.S. 448 (1998)................................................................39

*Schroeder v. West*,
    212 F.3d 1265 (Fed. Cir. 2000)..............................................46

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943)..................................................................48

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)...................................................... *passim*

*Timken Co. v. United States*,
    893 F.2d 337 (Fed. Cir. 1990)..............................................51

*United States v. Mead Corp.*,
    533 U.S. 218 (2001)................................................................43

*Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*,
    818 F.3d 1336 (Fed. Cir. 2016)..............................................38

**Statutes**

19 U.S.C. § 1516a(b) ...............................................................25

19 U.S.C. § 2272 .............................................................. *passim*

19 U.S.C. § 2273 ..................................................................2

19 U.S.C. § 2316 ............................................................8, 15

19 U.S.C. § 2395 .............................................................. *passim*

28 U.S.C. § 1361 .................................................................51

28 U.S.C. § 1651(a) ..............................................................51

28 U.S.C. § 2643(c) ......................................................... *passim*

**Legislative Materials**

Trade and Globalization Adjustment Assistance Act of 2009,
  Pub. L. No. 111-5, 123 Stat. 115 (2009) ....................................... *passim*

**Regulations**

29 C.F.R. § 90.18(c) ..............................................................9

**Federal Register**

*Labor's Notice of Determination,*
  84 Fed. Reg. 45,531 (Dep't of Labor Aug. 29, 2019)................................9

## GLOSSARY

| ACRONYM | FULL PHRASE |
|---|---|
| AT&T AVP-SLC #1 | AT&T's Assistant Vice President - Senior Legal Counsel, Chicago, Illinois |
| AT&T AVP-SLC #1 | AT&T's Assistant Vice President - Senior Legal Counsel, Atlanta, Georgia |
| BDR | Business Data Request |
| ETA | Employment and Training Administration |
| OMB | Office of Management and Budget |
| OTAA | Office of Trade Adjustment Assistance |
| TAA | Trade Adjustment Assistance |
| TEGL | Training And Employment Guidance Letter |
| TRA | Trade Readjustment Allowance |

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____

FORMER EMPLOYEES OF
AT&T SERVICES, INC.,

     Plaintiffs,

     v.                          Court No. 20-00075

UNITED STATES
SECRETARY OF LABOR,

     Defendant.

_____

**DEFENDANT'S REPLY TO PLAINTIFFS' COMMENTS ON THE
NOTICE OF NEGATIVE DETERMINATION ON SECOND REMAND**

Defendant, the United States, respectfully submits this reply to comments filed by plaintiffs, Former Employees of AT&T Services, Inc. *See* Pls. Br., ECF No. 55. This reply concerns the remand redetermination filed by the Secretary of Labor (Labor) pursuant to *Communications Workers of America Local 4123 ex rel. Former Employees of AT&T Corp. v. Secretary of Labor*, No. 20-00075, 2022 WL 43292 (Ct. Int'l Trade Jan. 5, 2021) (remand order). *See* Remand

Redetermination, ECF No. 49 (Redet.).  This brief also addresses the questions directed to the parties in the Court's June 16, 2022 order. *See* Order, ECF No. 59.

The Court should sustain Labor's remand redetermination because it is supported by substantial evidence and is otherwise in accordance with law.

## BACKGROUND

## I.   Statutory Framework And Labor's Practice Concerning Certification Of Company Information

Pursuant to 19 U.S.C. § 2272(d)(1), the Trade Adjustment Assistance (TAA) statute provides that, in making a determination whether to certify workers pursuant to 19 U.S.C. § 2273, "{t}he Secretary shall . . . obtain . . . information the Secretary determines to be necessary to make the certification, through questionnaires and in such other manner as the Secretary determines appropriate."  19 U.S.C. § 2272(d)(1).  The statute further provides that "{t}he Secretary may seek additional information to determine whether to certify a group of workers" through various means.  *Id.* § 2272(d)(2).

2

The statutory provision governing the verification of information through certification provides as follows:

### (3) Verification of information

#### (A) Certification

The Secretary shall require a firm or customer to certify--

(i) all information obtained under paragraph (1) from the firm or customer (as the case may be) through questionnaires; and

(ii) all other information obtained under paragraph (1) from the firm or customer (as the case may be) on which the Secretary relies in making a determination under section 2273 of this title, unless the Secretary has a reasonable basis for determining that such information is accurate and complete without being certified.

19 U.S.C. § 2272(d)(3)(A)(ii).

The information-certification provision at issue in this case was introduced with the Trade and Globalization Adjustment Assistance Act of 2009 (2009 Act).  Pub. L. No. 111-5, 123 Stat. 115 (2009). Following the enactment of the 2009 Act, on May 15, 2009, Labor's Employment and Training Administration (ETA) prepared materials, which address the information-certification requirement enacted by the 2009 Act.  Specifically, Labor issued Training And Employment

Guidance Letter No. 22-08 (TEGL No. No. 22-08), setting forth operating instructions for implementing the provisions to the Act.  *See* TEGL No. 22-08 https://wdr.doleta.gov/directives/attach/tegl/TEGL22-08.pdf, last visited June 20, 2022).  Attachment A to TEGL No. 22-08 includes a section entitled "B.4. Verification of Information," which explains the newly enacted verification requirement:

> The 2009 Act requires a firm or customer to verify the information it provides to the Department during the investigation of a TAA petition.  Under the new program, the Department {of Labor} will require the firm or customer providing information through questionnaires or in other formats to certify that the information is accurate and complete, unless the Department {of Labor} has a reasonable basis for determining that such certification is not required.  The various forms and communications used by the Department {of Labor} in collecting relevant information may include such an affirmation requirement.

*Id.*

In May 2009, ETA developed internal training materials which address the new verification provision, stating that:

> the legislation requires that the firm or customer providing information through questionnaires must certify that the

4

> information is accurate and complete, unless
> the Department {of Labor} has a "reasonable"
> basis for determining that such certification is
> not required.  The Department {of Labor} has
> discretion to determine what is reasonable
> based on prior submissions and communications
> by the subject firm.  As such, the investigator
> must maintain complete and accurate
> case/communication logs that would support a
> finding the Department {of Labor}'s reliance on
> the non-certified material was reasonable.

Tyler Decl. ¶ 6.  OTAA's investigators and certifying officers consider

a list of factors that OTAA officials have deemed relevant and

consistent with the statutory requirement, agency training materials,

and operating instructions in making their determinations as to

whether noncertified information from a firm is accurate and

complete.  *Id.* at ¶ 9.

## II.   Labor's Initial Investigation And Negative Determination

On March 4, 2019, a petition for Trade Adjustment Assistance

(TAA) was filed by Communications Workers of America (CWA), Local

4123 on behalf of the workers and former workers at five AT&T

Services, Inc. (AT&T) locations where the subject workers were

engaged in activities related to the supply of telecommunications

services: AT&T Kalamazoo, AT&T Appleton, AT&T Indianapolis,

AT&T Syracuse, and AT&T Meriden.  Redet. at 5-7.  In support of its

petition, CWA, Local 4123 submitted a copy of the CWA's "AT&T 2018

Jobs Report," which describes job losses by AT&T call center

employees throughout the United States and makes general

assertions that work is being moved to non-U.S. locations.  *Id.* at 9-10.

In the jobs report, closures are reported in various AT&T locations,

including AT&T Indianapolis, AT&T Kalamazoo, and AT&T Appleton.

*Id.* at 10.  The petitioner submitted additional anecdotal information

suggesting that workers in Jamaica were performing the same type of

call center work as workers at AT&T Appleton.  *Id.*

Related to the petitioner's allegation that work was being

offshored from the five subject locations, the jobs report provided a

narrative that offshoring of call center work was generally occurring

within AT&T at large, but did not present evidence that such a shift

occurred with respect to any of the five subject locations.  *Id.*

On March 8, 2019, AT&T's Assistant Vice President - Senior

Legal Counsel, in Chicago, Illinois (AT&T AVP-SLC #1), informed

Labor that, during the investigation, he would be the "appropriate

6

contact person" to provide information directly to Labor about AT&T Kalamazoo, AT&T Appleton, and AT&T Indianapolis, and that AT&T's Assistant Vice President - Senior Legal Counsel, Atlanta, Georgia (AT&T AVP-SLC #2), would be the appropriate contact to provide information directly to Labor about AT&T Syracuse and AT&T Meriden. *Id.* at 11.  In its initial petition filing, the CWA identified AT&T AVP-SLC #1 as the official that would be familiar with employment, job functions, and sales or production at each job location and be able to provide such information to Labor.  *Id.*

Labor coordinated with AT&T AVP-SLC #1 and AT&T AVP-SLC #2 to collect certified information through five responses to the Office of Management and Budget (OMB) Business Data Request (BDR) form, one for each of the five subject locations.  *Id.*  AT&T officials affirmed, under penalty of law pursuant to 19 U.S.C. § 2316 that the information provided in response to the initial questions posed by Labor was true, correct, and complete.  *Id.* at 11-12.  BDR responses were provided by AT&T's Center Sales Manager – Acquisition, Springfield, Missouri, for AT&T Appleton; AT&T's Center Sales Manager – Acquisition, Southfield, Michigan, for AT&T Indianapolis;

7

AT&T's Center Sales Manager – Retention, Kalamazoo, Michigan, for

AT&T Kalamazoo; AT&T's AVP Network Services, Middletown, New

Jersey, for AT&T Meriden; and AT&T's Director – Call Center,

Albany, New York, for AT&T Syracuse. *Id.* at 12.

During the investigation, Labor requested that AT&T AVP-SLC

#1 and AT&T AVP-SLC #2 provide further clarification about whether

the activities performed by workers at AT&T Kalamazoo, AT&T

Appleton, AT&T Indianapolis, AT&T Syracuse, and AT&T Meriden

were being shifted to a foreign country or acquired from a foreign

country. *Id.* at 13.

After addressing all worker group eligibility criteria for TAA

certification, on July 1, 2019, Labor issued a negative determination

regarding eligibility to apply for worker adjustment assistance,

applicable to workers and former workers of the five subject locations.

*Id.* at 7.  On August 29, 2019, Labor's Notice of Determination was

published in the *Federal Register*. *Id.* (citing 84 Fed. Reg. 45,531

(Dep't of Labor Aug. 29, 2019)).

## III.   Labor's Reconsideration Investigation And Negative Determination

On July 25, 2019, the CWA, Local 4123 requested administrative reconsideration of Labor's negative determination pursuant to 29 C.F.R. § 90.18(c).  Redet. at 7.  During the reconsideration investigation, Labor pursued additional lines of questioning with AT&T pertaining to CWA's allegations and collected additional clarifications about whether: (1) any of the work at the five subject locations was shifted to another country or countries or acquired from a foreign country, and (2) the group of workers or any portion of any of such a group met any of the worker group eligibility criteria for TAA certification.  *Id.* at 10.

On reconsideration, Labor asked AT&T AVP-SLC #1 for further clarification about whether the activities performed by workers at AT&T Appleton were being shifted to a foreign country or acquired from a foreign country.  *Id.* at 13.  Labor also asked AT&T for further clarification about the nature of work performed at the five subject locations within the context of AT&T's global operations.  *Id.* at 13-14.

9

On January 21, 2020, Labor issued a negative determination on reconsideration based on the finding that the worker group eligibility criteria set forth in 19 U.S.C. § 2272 were not met. *Id.* at 8.

## IV.   Plaintiffs' Appeal And The Court's May 4, 2021 Opinion And Order

In March 2020, plaintiffs commenced an action in this Court, challenging Labor's negative determination. *See* Compl., ECF No. 2. On May 4, 2021, the Court remanded this matter to Labor (1) to address certain evidence submitted by the union consisting of job reports and certain anecdotal examples of offshoring work, and to explain the reason the certifying officer selected AT&T's explanation rather than the union's evidence; and (2) to explain why it relied on noncertified evidence from the union members' former employer, AT&T. *See Communications Workers of America Local 4123 ex rel. Former Employees of AT&T Corp. v. Secretary of Labor*, 518 F. Supp. 3d 1342 (Ct. Int'l Trade 2021) (*Communications Workers I*).

## V.   Labor's Initial Remand Redetermination And Negative Determination

On remand, Labor reviewed plaintiffs' "AT&T 2018 Jobs Report" and additional anecdotal information provided during the initial

10

investigation. Redet. at 12. The "AT&T 2018 Jobs Report" describes job losses suffered by AT&T employees throughout the United States, and presents a general assertion that AT&T work has been and continues to be moved to non-U.S. locations. *Id.* The report also reports the closure of numerous U.S. call centers in various U.S. locations, including AT&T Indianapolis, AT&T Kalamazoo, and AT&T Appleton, and suggests that decisions to route calls to third-party call centers outside the United States may lead to reduced call volume for U.S. call centers. *Id.* at 12-13. The report also describes an AT&T call center opened in Mexico. *Id.* at 13. Plaintiffs had submitted additional anecdotal information during the initial investigation, suggesting that workers in Jamaica were performing the same type of call center work as workers at AT&T Appleton. *Id.* The general allegations in the "AT&T 2018 Jobs Report" and the specific allegation about call center work in Jamaica formed the basis of additional investigation questions to which AT&T officials were required to respond. *Id.*

Labor determined in the negative determination on remand that the general assertions in the AT&T 2018 Jobs Report "did not include

specific evidence or make specific claims that the work of the locations in question moved to or was acquired from a foreign country." *Id.* at 14. Labor also found that the anecdotal statements submitted by plaintiffs regarding an AT&T worker in Jamaica lacked specific and relevant information regarding any of the five subject locations and were not sufficient to call into question the specific certified information provided by AT&T. *Id.* Labor found that the certified information it relied upon was further corroborated and reinforced by AT&T responses that were not certified. *Id.*

## VI.   The Court's January 5, 2022 Remand Opinion And Order

In its January 5, 2022 opinion, the Court concluded that Labor had complied with the Court's remand order related to the first issue because it "addresse{d} the jobs report and explain{ed} why the certifying officer concluded that its implications, which were based on very general allegations, were rebutted by more specific evidence provided by AT&T." *Communications Workers of America Local 4123 ex rel. Former Employees of AT&T Corp. v. Secretary of Labor*, No. 20-00075, 2022 WL 43292, *4 (Ct. Int'l Trade Jan. 5, 2021) (*Communications Workers II*). Accordingly, the Court "conclude{d}

12

that Labor's determination is now sufficiently supported by substantial evidence." *Id.*

Related to the second issue, the Court remanded a second time based on its finding that Labor failed to explain why it had a reasonable basis to rely on noncertified information from AT&T. Id. at *4-5. In particular, the Court found that Labor's remand determination failed to explain whether the certifying officer relied on the certified questionnaire responses, the noncertified e-mail communications, or some combination of both. *Id.* at *5. As a result, the Court was unable to "discern whether the certifying officer believed the questionnaire responses alone would have been enough and the noncertified e-mail communications simply provided additional corroborating evidence — or whether, instead, the certifying officer regarded the e-mail communications as essential to her analysis." *Id.* The Court also concluded that Labor disregarded 19 U.S.C. § 2272(d)(3)(A)(ii) and the Court's remand order by failing to explain why it had a reasonable basis to rely on noncertified information from AT&T and, thus, the findings on which Labor based

13

that conclusion are not supported by substantial evidence and do not satisfy the statutory requirement. *Id.* at 5-6, 8.

Accordingly, the Court remanded the matter to Labor, ordering that (1) if Labor relies on noncertified evidence, it must reasonably explain why it finds that noncertified evidence accurate and complete; and (2) to the extent that it relies on noncertified evidence but cannot state a reasonable basis for finding it accurate and complete, then Labor must direct AT&T to certify the relevant evidence as described in 19 U.S.C. § 2272(d)(3)(A)(ii). *Id.* at 8.

## VII. Labor's March 2022 Remand Redetermination And Negative Determination

In its March 17, 2022 remand redetermination and accompanying Declaration of Norris Tyler III, the Administrator of Labor's Office of Trade Adjustment Assistance (OTAA), Labor complied with the Court's January 2022 remand order by identifying the evidence it relied upon among the certified and noncertified evidence on the record and explaining its reasonable basis for determining that noncertified information was accurate and complete. *See* Redet., ECF No. 49; Tyler Decl., ECF No. 52.

14

Labor began by identifying the certified information upon which it relied for its negative determination, all of which was collected through use of the BDR form and certified by AT&T officials, who affirmed, under penalty of law pursuant to 19 U.S.C. § 2316, that the information provided in response to the initial questions posed by Labor was true, correct, and complete.  Redet. at 14-18.  Labor also explained that the certified information that it collected from AT&T during the initial investigation established that the worker group eligibility criteria set forth in 19 U.S.C. § 2272 were not met.  *Id.* at 18; *see also id.* at 25 ("the certified information provided by AT&T officials . . . in itself supported a negative determination").

Based on information submitted by the petitioner and to confirm the accuracy and completeness of the BDR responses, during both the initial investigation and the reconsideration investigation, Labor collected additional information that was noncertified from AT&T AVP-SLC #1 and AT&T AVP-SLC #2 for clarification purposes.  *Id.* at 18.  Labor further explained that its follow-up questions to AT&T were intended to uncover specific details relating to the allegations in the petitioner's jobs report and anecdotal worker information.  *Id.*

15

Labor then set forth the noncertified information that it collected for purposes of clarification. *Id.* at 18-20. "In each instance," Labor explained, "the additional information provided in the noncertified AT&T responses corroborated and reinforced the certified information the Department {of Labor} had collected during the initial investigation." *Id.* at 20.

The remand redetermination in conjunction with the accompanying Tyler Declaration then thoroughly explain the factors that Labor relies upon to determine whether it possesses a reasonable basis for relying, "for clarification purposes," on the noncertified information provided by AT&T. *Id.* at 18, 20-26; *see also* Tyler Decl., ¶ 9. In the declaration, Mr. Tyler begins by discussing the operating instructions for TAA investigation staff set forth in Labor's training materials developed and used for implementation of the certification requirements enacted by the 2009 Trade Act. Tyler Decl., ¶ 6. Mr. Tyler further explains that OTAA provided the training materials to the Investigation Division staff at the time that the 2009 Trade Act provisions were implemented, and those materials continue to reflect the operating instructions for the investigation staff. *Id.* The

16

operating instructions explain that the 2009 Trade Act "requires that the firm or customer providing information through questionnaires must certify that the information is accurate and complete, unless the Department {of Labor} has a 'reasonable' basis for determining that such certification is not required." *Id.* The operating instructions further explain that Labor possesses the "discretion to determine what is reasonable based on prior submissions and communications by the subject firm." *Id.*

The Tyler Declaration then sets forth specific details regarding the five factors that Labor considers in exercising its discretion to determine whether the information provided by the workers' firm or the firms' customers is accurate and complete. *Id.* ¶ 9. Those five criteria are:

- {1} Whether, previously, the responding official has provided accurate and complete information (in the current investigation or, when applicable, in past investigations);

- {2} {I}f the responding official was identified by a petitioner or another firm official as having expertise, direct or specialized knowledge, or additional, more accurate, more complete and/or more recent information;

17

- {3} {W}hether the information provided is consistent with other information obtained during the course of the investigation, including information provided in the petition and information provided in a questionnaire that has been certified;

- {4} {W}hether the official providing the information has been made aware, by having previously certified a TAA questionnaire or otherwise, that information provided in the course of the investigation will be used to determine worker eligibility for trade adjustment assistance, and that knowingly providing false or misleading information in the investigation may constitute a violation of Federal law; and

- {5} {A}ny and all information in the administrative record or in the interactions of OTAA investigation division staff with the responding official or employee or from other sources that the responding official is, or is not, acting carefully and with integrity, or providing thorough and complete information.

*Id.*

In the remand redetermination, Labor applied these factors in determining that the agency had a reasonable basis for relying on noncertified information for purposes of corroborating and clarifying the certified information it had received through the certified BDR.

18

*See* Redet. at 20-26.  Applying these factors, Labor determined it had a reasonable basis to rely, for clarification and corroboration purposes, on the noncertified responses to follow-up questions provided by AT&T AVP-SLC #1 and AT&T AVP-SLC #2.  *Id.*  Based on these considerations, Labor found that "the record reflects {a} sufficient and reasonable basis to find the noncertified information provided by AT&T officials to be accurate and complete{.}"  *Id.* at 25-26.

Labor again found that plaintiffs failed to meet the statutory elements for TAA eligibility, concluding that "the certified information provided by AT&T officials . . . in itself supported a negative determination{.}"  *Id.* at 25.

## VIII. The Potential Termination Of The TAA Program If Not Reauthorized Or Continued By June 30, 2022

On June 16, 2022, we filed a notice advising the Court of the potential termination of the TAA program on June 30, 2022, unless legislation to reauthorize or continue the program is enacted by Congress, accompanied by a motion to stay these proceedings until such time as the TAA program is reauthorized or continued.  *See* Def. Notice & Stay Mot., ECF No. 56.

In our filing, we explained that, on June 10, 2022, Labor issued Training and Employment Guidance Letter No. 13-21 (TEGL No. 13-21), advising that the authorization of appropriations for the TAA program expires on June 30, 2022, and that, absent congressional action to reauthorize or continue the program, the statutory termination provisions will take effect beginning on July 1, 2022. *Id.*

TEGL No. 13-21 explains that "{p}rogram termination means the Department {of Labor} will no longer certify petitions for TAA after June 30, 2022." *Id.* at 3. Further, TEGL No. 13-21 provides that, "{o}n July 1, 2022, absent the enactment of legislation that reauthorizes the TAA Program, the termination provision under Section 285(a) of the Trade Act of 1974, as amended, will take effect." *Id.* Among other requirements, to be entitled to TAA benefits and services on and after July 1, 2022, a worker must "be covered by a petition filed and determined to be certified on or before June 30, 2022." *Id.* Thus, "{o}nly petitions that are filed *and certified* on or before 11:59 PM EDT Thursday, June 30, 2022, may allow a worker in the covered group to be eligible for TAA after June 30, 2022{.}" *Id.* (emphasis in the original). Finally, TEGL No. 13-21 provides that

"{p}etitions for worker group certification pending before the Court of International Trade after June 30, 2022, will be treated as pending petitions if no certification has been issued on or before that date{.}" and also provides that, "{a}t that time, the statutory language contained in any reauthorizing legislation will determine the status of these pending petitions{.}" *Id.* at 3-4. Plaintiffs' TAA petition is currently the only petition on appeal in this Court.

The same day, the Court convened a status conference with the parties concerning the Government's filing. *See* ECF Nos. 57, 58. In denying the Government's motion to stay, the Court ordered the parties to address by June 23, 2022 whether, if the Court determines that Labor's second remand results require a further remand, (a) the Court has the authority to order Labor to certify plaintiffs by June 30, 2022, as eligible for TAA benefits, and (b) if the Court does so order certification by that date, whether the Court can and should stay Labor's obligation to provide plaintiffs with benefits pending the outcome of any appeal. Order, ECF No. 59.

## SUMMARY OF THE ARGUMENT

In its remand redetermination, Labor provides a thorough explanation regarding its reasonable basis for determining the subject firm's information was accurate and complete pursuant to 19 U.S.C. § 2272(d)(3)(A)(ii).  Specifically, Labor explained that it applies five factors to make its reasonable-basis determination.  Plaintiffs simply ignore this explanation, and thus their challenge fails.

Labor's reliance on the five reasonable-basis factors — most of which turn on Labor's assessment of the subject firm's credibility based on its prior submissions and communications with Labor — is consistent with binding precedent.  Although pre-dating the 2009 verification provision codified in 19 U.S.C. § 2272(d)(3)(A)(ii), the Federal Circuit has held that Labor is entitled to base a TAA eligibility determination on statements from company officials if the agency reasonably concludes that those statements are creditworthy and are not contradicted by other evidence.  The Federal Circuit's holding mirrors both the statute and Labor's five reasonable-basis factors.

22

Furthermore, Labor's interpretation of 19 U.S.C.

§ 2272(d)(3)(A)(ii) is entitled to *Chevron* deference because the

interpretation is a permissible interpretation of the statute under a

*Chevron* step-two analysis.  Based on its analysis of the statute, Labor

reasonably concluded that it possesses the discretion to determine

what is reasonable based on prior submissions and communications

by the subject firm.  Labor has also developed five factors that it

considers in determining whether it possesses a reasonable basis for

determining the firm's information is accurate and complete.  Labor's

application of the five factors is discussed in the remand

redetermination.  Plaintiffs fail to explain why Labor's factors are

unreasonable.

Alternatively, even if *Chevron* deference does not apply, Labor's

interpretation of what constitutes a "reasonable basis" is entitled to

*Skidmore* deference because Labor's interpretation of the verification

provision reflects a careful analysis of the statute, consistency,

formality, and its expertise in conducting TAA investigations.  As

discussed above, in determining whether it possesses a reasonable

basis to believe information from the subject firm is accurate and

23

complete, Labor considers five factors, and has applied these factors since 2009, the year the verification provision was enacted. Thus, consideration of these factors constitutes the agency's practice.

Finally, in its June 16, 2022 order, the Court ordered the parties to brief whether the Court is authorized to order Labor to certify plaintiffs to TAA benefits, and whether the Court can and should stay Labor's purported obligation to provide plaintiffs with TAA benefits pending the outcome of any appeal. Related to the first issue, the Court is not authorized to order Labor to certify plaintiffs for several reasons: (1) 19 U.S.C. § 2395(b) and (c) authorize the Court to only affirm or remand Labor's TAA determinations; (2) 28 U.S.C. § 2643(c)(2) prohibits this Court from issuing writs of mandamus when reviewing a negative determination by Labor, which is effectively what an order requiring Labor to certify plaintiffs as eligible for TAA benefits will do; and (3) a Court-ordered certification would contravene 19 U.S.C. § 2272, which authorizes the award of TAA benefits only when the statutory criteria have been met, which is not the case here. Related to the Court's question regarding a stay of this matter, the Court can and should stay Labor's purported

24

obligation to provide plaintiffs with TAA benefits pending the outcome of any appeal.

## ARGUMENT

## I.  Standard Of Review

In remand proceedings, the Court will sustain an agency's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  Substantial evidence means evidence that a "reasonable mind might accept as adequate to support a conclusion." *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

II.   **Labor Fully Explained That It Possessed A Reasonable Basis For Determining That The Noncertified Information Was Accurate And Complete Based On Five Factors**

Plaintiffs contend that Labor's "attempt{ } to provide a reasonable basis for its decision to rely on noncertified evidence{ }" was based on nothing more than "simply repackag{ing} the same reasons and legal theories that the Court has already rejected."  Pls. Br. at 8-9; *see also id.* at 1-5, 11-18.  Plaintiffs simply ignore the five factors that Labor applied in determining that it possessed a reasonable basis.

As a preliminary matter, Labor did not rely on noncertified information in determining that plaintiffs were not eligible for TAA benefits.  As explained in the remand redetermination, based on information submitted by the petitioner and to confirm the accuracy and completeness of the BDR responses, during the reconsideration investigation, Labor collected additional information that was noncertified from AT&T *for clarification purposes*.  Redet. at 18. Labor further explained that its follow-up questions to AT&T were intended to uncover specific details relating to the allegations in plaintiffs' jobs report and anecdotal worker information.  *Id.*  Labor

26

then set forth the noncertified information that it collected for purposes of clarification. *Id.* at 18-20. "In each instance," Labor explained, "the additional information provided in the noncertified AT&T responses corroborated and reinforced the certified information the Department {of Labor} had collected during the initial investigation." *Id.* at 20. But the remand redetermination expressly states that "the certified information provided by AT&T officials . . . in itself supported a negative determination{.}" *Id.* at 25. Thus, the noncertified information constitutes clarifying and corroborating information, and the certified information, standing alone was sufficient to support a negative determination. *Id.*

Moreover, the remand redetermination thoroughly explains the factors that Labor relied upon to determine whether it possesses a reasonable basis for determining that the noncertified information provided by AT&T is accurate and complete. Redet. at 20-26; *see also* Tyler Decl., ¶ 9. Labor explained the procedures to be followed by TAA investigation staff set forth in Labor's training materials developed and used for implementation of the certification requirements enacted by the 2009 Trade Act. Tyler Decl., ¶ 6. OTAA

27

provided the training materials to the Investigation Division staff at the time Labor implemented the 2009 Trade Act provisions, and those training materials continue to reflect the operating instructions for TAA investigation staff.  *Id.*  The operating instructions explain that the 2009 Trade Act "requires that the firm or customer providing information through questionnaires must certify that the information is accurate and complete, unless the Department {of Labor} has a 'reasonable' basis for determining that such certification is not required."  *Id.*  The operating instructions further explain that Labor possesses the "discretion to determine what is reasonable based on prior submissions and communications by the subject firm."  *Id.*

Labor set forth five factors that it considers in exercising its discretion to determine whether the information provided by the workers' firm or the firms' customers is accurate and complete.  *Id.* ¶ 9.  The first factor considers "{w}hether, previously, the responding official has provided accurate and complete information (in the current investigation or, when applicable, in past investigations)."  *Id.* Labor concluded that AT&T AVP-SLC #1 complied with this factor based on his conduct during the initial and reconsideration

28

investigations, including "by identifying and arranging for completion
of the BDR form for each of the three AT&T locations for which he
was coordinating responses by AT&T officials who were specifically
knowledgeable regarding those respective sites." Redet. at 21-22.
Labor "considered this diligent effort to seek out the best official to
certify information on behalf of AT&T . . . contributed to the
Department {of Labor}'s determination that it is reasonable to
conclude that information that AT&T AVP-SLC #1 provided later in
the investigation was accurate and complete without certification."
*Id.* at 22.

Labor also concluded that AT&T AVP-SLC #2 complied with the
first factor "by identifying and arranging for completion of the BDR
form for each of the two AT&T locations for which he was coordinating
responses by AT&T officials specifically knowledgeable regarding
those sites{.}" *Id.* at 22-23.

Labor also had a reasonable basis for determining that the
noncertified information was accurate and complete based on the
application of the second factor, pertaining to whether the responding
official was identified by a petitioner or another firm official as having

29

expertise, direct or specialized knowledge, or additional, more accurate, more complete and/or more recent information.  *See* Tyler Decl., ¶ 9.  In its initial petition filing, *plaintiffs* identified AT&T AVP-SLC #1 as the official that would be familiar with employment, job functions, and sales or production at each job location and be able to provide such information to Labor.  Redet. at 11.

Related to the third reasonable-basis factor — whether the information provided is consistent with other information obtained during the course of the investigation, including information provided in the petition and information provided in a questionnaire that has been certified (*see* Tyler Decl., ¶ 9) — Labor also determined that this factor was satisfied.  Specifically, Labor concluded that the noncertified information, which had been collected during the reconsideration investigation for purposes of clarification, corroborated the certified information collected during the initial investigation.  Redet. at 20.

Labor also found that the noncertified information satisfied the fourth reasonable-basis factor, which considers whether the official providing the information has been made aware, by having previously

30

certified a TAA questionnaire or otherwise, that information provided in the course of the investigation will be used to determine worker eligibility for trade adjustment assistance, and that knowingly providing false or misleading information in the investigation may constitute a violation of Federal law. *See* Tyler Decl., ¶ 9. Labor explained that its belief in the reliability of the information that AT&T AVP-SLC #1 and AT&T AVP-SLC #2 provided was informed by their roles as in-house legal counsel for AT&T and their awareness of the requirement that they must provide accurate and complete information, and that there are penalties for not providing information that is accurate and complete. Redet. at 23-25.

Labor further found that the noncertified information satisfied the fifth reasonable-basis factor, which considers all information in the administrative record, in the interactions of OTAA investigation division staff with the responding official or employee, or from other sources showing that the responding official is, or is not, acting carefully and with integrity, or providing thorough and complete information. *See* Tyler Decl., ¶ 9. Labor explained why it reasonably concluded that AT&T AVP-SLC #1 had made a "diligent effort."

31

Redet. at 21-22.  Further, Labor relied on the fact that AT&T AVP-SLC #1 had requested two extensions of the deadline for AT&T to return the BDR forms based on the availability of the appropriate subject-matter experts to certify the information that would be provided to Labor on the BDR forms.  *Id.* at 25.  Labor inferred from such requests that AT&T was engaging in "a deliberate process for vetting the accuracy and completeness of information that it submits to {Labor,}" and that it was reasonable to infer that "such deliberate vetting is a customary business practice" that also would have been followed by AT&T AVP-SLC #1 and AT&T AVP-SLC #2 in preparing the responses to Labor's noncertified additional information requests. *Id.*

Based on these considerations, Labor found that "the record reflects sufficient and reasonable basis to find the noncertified information provided by AT&T officials to be accurate and complete{.}" *Id.* at 25-26.  Thus, Labor applied five factors in determining that the agency had a reasonable basis for determining that the noncertified information was accurate and complete for purposes of corroborating

and clarifying the certified information it had received through the BDR. *See id.* at 20-26; Tyler Decl., ¶ 9.

Plaintiffs take issue with Labor's reasonable assessment of these facts (*see* Pl. Br. at 11-17), effectively asking this Court to reweigh the evidence. The Court should reject plaintiffs' invitation to reweigh the evidence, which is impermissible under the substantial evidence standard. *See, e.g.*, *SolarWorld Americas, Inc. v. United States*, 910 F.3d 1216, 1225 (Fed. Cir. 2018) (declining to "reweigh the evidence already considered by Commerce"); *Downhole Pipe & Equipment, L.P. v. United States*, 776 F.3d 1369, 1378 (Fed. Cir. 2015) ("This court declines Appellants' invitation to reweigh the evidence in order to reject Commerce's conclusions, which were well-supported and fully explained.").

Further, plaintiffs all but ignore Labor's explanation and application of the five reasonable-basis factors, consigning the sole mention of the Tyler Declaration's discussion of these factors to a footnote in which plaintiffs contend that the declaration contains "general statements" that "do not explain why, in view of the record facts and circumstances of this proceeding, Labor reasonably relied on

33

noncertified evidence to reach a negative determination in its Second

Remand Results." *See* Pls. Br. at 15 n.5. Again, Labor did not rely on

the noncertified information to make its negative determination.

Redet. at 25. And explaining Labor's practice related to noncertified

information is precisely what the Tyler Declaration does. *See* Tyler

Decl. ¶¶ 6, 9. Plaintiffs fail to explain why the agency's reliance on

and application of the reasonable-basis factors was unreasonable.

Plaintiffs' silence dooms its challenge.

Indeed, the reasonableness of Labor's approach is supported by

precedent from the United States Court of Appeals for the Federal

Circuit. Although predating the 2009 amendments that introduced

the "reasonable basis" statutory provision, in two decisions governing

the TAA, the Federal Circuit has held that "{t}he Secretary is entitled

to base {a TAA} eligibility determination on statements from company

officials if the Secretary reasonably concludes that those statements

are creditworthy and are not contradicted by other evidence." *Former

Emps. of Marathon Ashland Pipe Line, LLC v. Chao*, 370 F.3d 1375,

1385 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1049 (2005) (citing

*Former Emps. of Barry Callebout v. Chao*, 357 F.3d 1377, 1383 (Fed.

Cir. 2004)).  The Federal Circuit's reasonableness standard mirrors the statute.  And the Federal Circuit's focus on Labor's discretion to determine whether company statements are "creditworthy" and "not contradicted by other evidence" mirrors reasonable-basis factors 1, 3, and 5.  *See* Tyler Decl. ¶ 9.

Plaintiffs also contend that Labor relies on certain arguments that the Court has already rejected.  *See* Pls. Br. at 5, 11-16.  The Court rejected those arguments because it concluded that Labor had failed to reasonably explain why it found the noncertified evidence accurate and complete.  *Communications Workers II*, 2022 WL 43292 at *5-8.  In the remand redetermination, Labor provides a thorough explanation based on the five factors that it relies upon for determining whether it possesses a reasonable basis to believe noncertified information is accurate and complete.  Redet. at 20-26; Tyler Decl. ¶ 9.  Again, plaintiffs fail to address those factors.  In any event, the certified information provided by AT&T officials, standing alone, supports a negative determination.  Redet. at 25.

Similarly without merit is plaintiffs' contention that Labor did not discuss any efforts to have AT&T certify the noncertified

35

information.  *See* Pls. Br. at 6.  But the Court only required Labor to certify the noncertified information "{t}o the extent that {Labor} relies on noncertified evidence but cannot state a reasonable basis for finding it accurate and complete{.}" *Communications Workers II*, 2022 WL 43292 at *8.  Neither of those circumstances applied on remand.  First of all, Labor did not rely on the noncertified information, but collected it for purposes of clarification and corroboration.  As Labor explained, "the additional information provided in the noncertified AT&T responses corroborated and reinforced the certified information the Department {of Labor} had collected during the initial investigation."  Redet. at 20.  Moreover, although the certified information alone supported a negative determination, Labor provided a reasonable basis for finding the noncertified information accurate and complete based on its application of its five reasonable-basis factors.  Redet. at 20-26; Tyler Decl. ¶ 9.

Because Labor's interpretation of 19 U.S.C. § 2272(d)(3)(A)(ii) is fully explained and reasonable, it should be sustained.  *See Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1385 (Fed. Cir.

2014) ("An agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence."); *Barry Callebaut*, 357 F.3d at 1381 ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

## III.   Labor's Interpretation Of The TAA Statute Is Entitled To *Chevron* Deference

Labor's interpretation of 19 U.S.C. § 2272(d)(3)(A)(ii) is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), because it is rational and consistent with the statute.

### A.   Legal Standard

The Court's review of an agency's interpretation of a statute that it administers is governed by the two-step framework articulated in *Chevron*. *See Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1346 (Fed. Cir. 2016). "Step-one of *Chevron* asks whether Congress 'directly addressed the precise question at issue.'" *Gilead Sciences, Inc. v. Lee*, 778 F.3d 1341, 1346 (Fed. Cir. 2015) (quoting

*Chevron*, 467 U.S. at 842). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. The reviewing court employs "traditional tools of statutory construction" to ascertain whether "Congress had an intention on the precise question{.}" *Id.* at 843 n.9. "{I}f the statute is silent or ambiguous with respect to the specific issue, the question for the court {under *Chevron* Step-Two} is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

### B. Labor's Interpretation Is Entitled To Deference Under *Chevron* Step-Two Because It Is Permissible

The Court should sustain Labor's interpretation of the statute as permissible under a *Chevron* step-two analysis.

"In step-two, *Chevron* requires determination of 'whether the {agency's} answer is based on a permissible construction of the statute.'" *Gilead Sciences, Inc.*, 778 F.3d at 1349 (quoting *Chevron*, 467 U.S. at 842-43). "At this stage of the *Chevron* analysis, judicial deference to an agency's construction of a statutory scheme is afforded considerable weight." *Id.* (citing *Chevron*, 467 U.S. at 844); *see also*

*Long v. Social Sec. Admin.*, 635 F.3d 526, 535 (Fed. Cir. 2011) (holding that the Court must decide "whether the agency's construction is 'rational and consistent with the statute.'").  "If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design," the Court must give "that reading controlling weight, even if it is not the answer 'the court would have reached if the question initially had arisen in a judicial proceeding.'" *Long*, 635 F.3d at 535 (quoting *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998)).

As demonstrated above, based on its analysis of the statute, Labor reasonably concluded that it "has discretion to determine what is reasonable based on prior submissions and communications by the subject firm."  Tyler Decl. ¶ 6.  Labor's consideration of prior submissions and communications by the subject firm turns on the application of five factors (id. at ¶ 9), all of which are reflected in Labor's remand redetermination.  Redet. at 20-26; *see also id.* at 11 (discussing application of the second reasonable-basis factor based on information in plaintiff's petition).

39

Further, the reasonableness of Labor's approach is supported by precedent from the Federal Circuit. Although predating the 2009 amendments that introduced the "reasonable basis" statutory provision, in two decisions governing the TAA, the Federal Circuit has held that "{t}he Secretary is entitled to base {a TAA} eligibility determination on statements from company officials if the Secretary reasonably concludes that those statements are creditworthy and are not contradicted by other evidence." *Former Emps. of Marathon Ashland Pipe Line, LLC*, 370 F.3d at 1385 (citing *Former Emps. of Barry Callebout*, 357 F.3d at 1383). The Federal Circuit's reasonableness standard mirrors the statute and Labor's five reasonable-basis factors.

There is nothing in the statute or the statutory scheme indicating that Labor's interpretation is impermissible. Indeed, plaintiffs simply ignore the reasonable-basis factors relied upon by Labor. Instead, plaintiffs' arguments would essentially remove Labor's discretion from the statute and have this Court create a presumption that noncertified information is not creditworthy despite Labor's thorough explanation to the contrary.

40

Because Labor's interpretation of "reasonable basis" is based on a permissible interpretation of the statute, its interpretation is entitled to deference under *Chevron* step-two. *See, e.g.*, *BMW of North Am. LLC v. United States*, 926 F.3d 1291, 1299 (Fed. Cir. 2019) (after "proceed{ing} to *Chevron* step two and consider{ing} whether Commerce's interpretation . . . is a permissible reading of the statute{,}" "conclud{ing} that it is" because, among other things, "the statute does not restrict Commerce's authority on this point"); *Ford Motor Co. v. United States*, 809 F.3d 1320, 1324-25 (Fed. Cir. 2016) (holding that the trial court did not err in affording *Chevron* deference to CBP's remand explanation concerning a statutory interpretation and in finding the explanation reasonable).

## IV.   Labor's Interpretation Is Entitled To *Skidmore* Deference

Alternatively, Labor's interpretation of 19 U.S.C. § 2272(d)(3)(A)(ii) is entitled to *Skidmore* deference.  "Even if *Chevron* deference does not apply, an agency's construction of a statute that it is charged with administering is still subject to some deference under the standard set forth by the Supreme Court" in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *Cathedral Candle Co. v. U.S. Int'l Trade*

41

*Comm'n*, 400 F.3d 1352, 1365 (Fed. Cir. 2005). "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position{.}" *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citing *Skidmore*, 323 U.S. at 139-40); *see also Cathedral Candle Co.*, 400 F.3d at 1366 (recognizing that deference is appropriate "if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if {the Court} might not have adopted that construction without the benefit of the agency's analysis").

First, Labor's interpretation of 19 U.S.C. § 2272(d)(3)(A)(ii) reflects a careful analysis of the statute, consistency, formality, and its expertise in conducting TAA investigations. Labor's internal training materials dating back to 2009 considered the then-newly enacted statutory provision and the discretion it afforded Labor to determine when certification was required. Tyler Decl. ¶ 6. Based on

42

its analysis, Labor concluded that it "has discretion to determine what is reasonable based on prior submissions and communications by the subject firm." *Id.*  These internal training materials were developed and used for implementation of the certification requirements enacted by the 2009 Trade Act, and OTAA provided these materials to Investigation Division staff at the time the 2009 Trade Act provisions were implemented and also to staff who have subsequently joined. *Id.* These training materials continue to reflect the operating instructions issued by Labor. *Id.*  In determining whether it possesses a reasonable basis to believe information from the subject firm is accurate and complete, the practice of OTAA's Investigation Division is to consider the five factors. *Id.* ¶ 9.

Labor's consistent interpretation of "reasonable basis" reflects "the well-reasoned views of the {agency} implementing a statute" and "constitute{s} a body of experience and informed judgment to which courts and litigants may properly resort for guidance{.}" *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (quoting *Skidmore*, 323 U.S. at 139-140).  Thus, the Court should accord *Skidmore* deference to Labor's interpretation. *See Cathedral Candle Co.*, 400 F.3d at 1367 (according

*Skidmore* deference to the International Trade Commission's statutory interpretation); *see also Prestonback v. United States*, 965 F.3d 1363, 1369 & n.3 (Fed. Cir. 2020) (holding that "the Government's reasonable interpretation of the recoupment statute should be afforded {*Skidmore*} deference").

## V.    The Court Is Not Authorized To Order Labor To Certify Plaintiffs

In light of the potential lapse of the TAA program on June 30, 2022, unless authorized or continued by Congress, the Court ordered the parties to address whether, if the Court determines that Labor's second remand results require a further remand, (a) the Court has the authority to order Labor to certify plaintiffs by June 30, 2022, as eligible for TAA benefits, and (b) if the Court does so order certification by that date, whether the Court can and should stay Labor's obligation to provide plaintiffs with benefits pending the outcome of any appeal.  Order, ECF No. 59.  Related to the Court's first inquiry, as demonstrated below, under the statutory scheme, this Court does not possess the authority to order Labor to certify plaintiffs.  Related to the Court's second inquiry, in the event the

44

Court orders certification by June 30, the Court can and should stay Labor's purported obligation to provide plaintiffs with benefits pending the outcome of any appeal.

## A. The Court's Authority Under 19 U.S.C. § 2395 Is Limited To Affirming Or Remanding Labor's Determinations

Court-ordered certification is precluded by 19 U.S.C. § 2395, the statutory provision governing judicial review of Labor determinations.

Courts cannot exercise authority beyond their mandate. "Federal courts are courts of limited jurisdiction{,}" and "possess only that power authorized by Constitution and statute{.}" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In this case, there is no constitutional or statutory authority that empowers this Court to order Labor to certify plaintiffs when no finding has been made, by either Labor or this Court, that the TAA eligibility requirements have been met.

Pursuant to 19 U.S.C. § 2395(c), "{t}he Court of International Trade shall have jurisdiction to affirm the action of the Secretary of Labor . . ., or to set such action aside, in whole or in part." 19 U.S.C. § 2395(c). Furthermore, 19 U.S.C. § 2395(b) provides, in relevant

part, that "findings of fact by the Secretary of Labor . . . if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to such Secretary to take further evidence{.}" *Id.* § 2395(b).  Thus, pursuant to 19 U.S.C. § 2395(b), although the Court may *remand* a case to Labor for further evidence, there is no provision in the statute that allows the Court to direct Labor to certify plaintiffs for TAA benefits.

Indeed, the Supreme Court has frequently made clear that when a court detects a flaw in an agency's findings, the court is, "except in rare circumstances, . . . to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 123 S.Ct. 353, 355 (2002) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  When Congress has "entrust{ed} the agency to make the basic . . . decision," a remand is necessary because the ultimate right to exercise factfinding discretion rests "primarily in agency hands{,}" and a "judicial judgment cannot be made to do service for an administrative judgment." *Id.* (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)).

To date, the Federal Circuit has not reached the issue of whether this Court can order Labor to certify workers. *See Former Employees of Marathon Ashland Pipe Line LLC,* 370 F.3d at 1386 (in reversing this Court's certification order, finding, under the circumstances, "no occasion to address the government's argument that the remedy ordered by the {Court of International Trade} was outside {its} authority"); *Former Employees of Barry Callebaut*, 357 F.3d at 1383 (in reversing this Court's certification order, deeming moot "the question of the Court of International Trade's authority to order Labor to certify {workers}" for TAA benefits).

The most recent decisions from this Court to consider the legality of Court-ordered certifications date back to 2007. In *Former Employees of Merrill Corp. v. United States*, although finding that plaintiffs had satisfied the TAA eligibility requirements there, this Court held that it "is powerless to direct Labor to certify Plaintiffs as eligible for TAA{ }" because "{t}he Trade Act is clear": "This Court may affirm Labor's determination or it may set aside Labor's determination in whole or in part, 19 U.S.C. § 2395(c), but this Court is not authorized to direct Labor to certify Plaintiffs as eligible for

47

TAA, 28 U.S.C. § 2643(c)(2) (2000)).”  483 F. Supp. 2d 1256, 1273 (Ct. Int’l Trade 2007).

In *Former Employees of International Business Machines Corp. v. United States*, however, the Court held open the possibility that a Court-ordered certification may be an available remedy.  483 F. Supp. 2d 1284, 1337 (Ct. Int’l Trade 2007).  In that case, the Court observed that, “a careful reading of the relevant precedent . . . suggest{ed} that, if a case of court-ordered certification is to have any shot at surviving on appeal, it must be a clear-cut case where another remand would be plainly futile{,}” ultimately concluding, however, that, “{t}hough it may be close, this is not (yet) that case.”  *Id.*  The Court in that case did not analyze the statutory authority relied upon by the Government in *Former Employees of Marathon Ashland Pipe Line LLC*, *Former Employees of Barry Callebaut*, or *Former Employees of Merrill Corp.*

### B.   Court-Ordered Certification Would Violate 28 U.S.C. § 2643(c)(2)

Court-ordered certification is also foreclosed by 28 U.S.C. § 2643(c)(2).  Pursuant to that statute, “{t}he Court of International

Trade may not grant an injunction or issue a writ of mandamus in any civil action commenced to review any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974{.}"  28 U.S.C. § 2643(c)(2).  With 28 U.S.C. § 2643(c)(2), Congress took the affirmative step of *prohibiting* this Court from granting injunctions or issuing writs of mandamus when reviewing a negative determination by Labor.  28 U.S.C. § 2643(c)(2).

Although "{t}he court has authority to issue a writ of mandamus under 28 U.S.C. §§ 1361, 1651(a)," *Fresh Garlic Producers Association v. United States*, 190 F. Supp. 3d 1302, 1305 (Ct. Int'l Trade 2016), mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotations omitted). The "requirements for issuing a writ of *mandamus*" are: "(1) a clear duty on the part of the defendant to perform the act in question; (2) a clear right on the part of the plaintiff to demand the relief sought; and (3) an absence of an adequate alternative remedy." *Timken Co. v. United States*, 893 F.2d 337, 339 (Fed. Cir. 1990) (citations omitted). In addition, "the issuing court, in the exercise of its discretion, must

49

be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381.  Plaintiffs do not enjoy any such "clear right" to the relief sought, and Labor possesses no "clear duty" to certify plaintiffs.

Here, although an order issued by this Court would not be entitled to a writ of mandamus, its effect would be the same because the Court would be ordering Labor to certify plaintiffs.  *See Former Employees of Merrill Corp.*, 483 F. Supp. 2d at 1273 (holding that, even if separated workers satisfied all of the eligibility requirements for TAA certification, the Court was powerless to direct Labor to certify them as eligible for TAA pursuant to 28 U.S.C. § 2643(c)(2)).

## C.   Plaintiffs Do Not Satisfy The Statutory Criteria For Certification

Even assuming that the Court possessed the authority to order Labor to certify plaintiffs for TAA benefits, in this case, neither Labor nor this Court has found that the statutory criteria are satisfied, which precludes certification under the TAA statute.

A plain reading of the TAA statute illustrates that Congress has authorized the award of benefits only when "{t}he Secretary" certifies

that the statutory criteria have been met.  19 U.S.C. § 2272.  Thus, a

Court-ordered certification would usurp the statutory discretion that

Congress has vested in Labor.  Furthermore, the statute is not

intended to benefit workers whose separations do not satisfy the

statutory elements.  Thus, absent such a finding, the Court would be

essentially ordering Labor to act in a manner that is contrary to the

purpose of the statute because workers who have not been found to

meet the statutory requirements would be awarded benefits.  Here, in

direct contravention of the statute's plain language, the Court would

be commanding the Secretary of Labor to certify as eligible for

benefits workers who have not been found to meet the statutory

requirements for those benefits.  There is simply no constitutional or

statutory authority that allows the Court — a court of limited

jurisdiction — to order Labor to certify plaintiffs when no finding has

been made that the statutory requirements have been met.

And nowhere in the statutory scheme did Congress grant this

Court authority to certify ineligible petitioners when faced, as here,

with congressional inaction.  While this Court has "sympathize{d}

with the unfortunate and difficult circumstances plaintiffs' job loss

may have imposed upon them," this Court has also recognized that it "is bound to apply the statute as intended by Congress." *Former Employees of Hewlett-Packard Co. v. United States*, 17 C.I.T. 980, 986 (1993).

### D.   A Stay Pending Appeal Is An Available Option

In the event the Court orders certification by June 30, the Court can and should stay Labor's purported obligation to provide plaintiffs with TAA benefits pending the outcome of any appeal.

The Court possesses broad discretion to stay proceedings. The Supreme Court has held that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When considering a stay, the Court should "weigh competing interests and maintain an even balance." *Id.* at 255. "A court may properly determine that 'it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which

bear upon the case.'" *Diamond Sawblades Mfrs.' Coal. v. United States*, 34 C.I.T. 404, 406 (2010) (citation omitted).

A stay is warranted because, in the event the Court orders Labor to provide plaintiffs with benefits, there is the risk that the Federal Circuit will reverse the order, resulting in termination of such benefits. Immediately following the certification of a TAA petition, OTAA officials provide notice to the petitioning workers, worker representatives, firm officials, and state program officials, in this case officials in five states. State program officials are required to immediately contact firm officials for comprehensive worker lists, including reasons for separation, and to follow-up through other means as necessary to ensure they have complete information. The states immediately notify and meet with workers who seek TAA benefits and services. Certified workers go through comprehensive assessments, resulting in the development of a training plan, may have training tuition payments made on their behalf, and are entitled to Trade Readjustment Allowance (TRA) payments when in training or where a waiver requirement is met. States perform these functions using Federal administrative funds, and the TRA payment and

worker training are also federally funded.  If the TAA certification is
terminated, the worker beneficiaries may be required to repay the
TRA payments if a financial hardship waiver is not available.
Payment for training would also cease, leaving the workers to either
pay for it themselves or abandon the training, potentially resulting in
wasted training funds.  Such an outcome would be potentially
disruptive to plaintiffs, who would receive benefits for a time only to
have them terminated.  Such an outcome would also burden Labor
and the five state governments at issue.

Further, a stay of Labor's purported obligation to provide
plaintiffs with benefits pending the outcome of any appeal would not
prejudice any party.  Accordingly, a stay is warranted.  *See An Giang
Agri. & Food Import Export Co. v. United States*, 350 F. Supp. 2d
1162, 1172 (Ct. Int'l Trade 2004) ("Particularly in light of the absence
of any showing of real harm associated with it, entry of the requested
stay will serve both the interests of judicial economy and the interests
of the parties as well."); *Jiaxing Bros. Fastener Co. v. United States*,
179 F. Supp. 3d 1156, 1160 (Ct. Int'l Trade 2016) (granting a stay

because, among other reasons, there was no evidence that "a stay will work any real hardship").

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Labor's remand redetermination as supported by substantial evidence and in accordance with law.

<div style="margin-left: 40%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General


PATRICIA M. MCCARTHY
Director


s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

</div>

OF COUNSEL:

       /s/ Antonia R. Soares

TECLA A. MURPHY  ANTONIA R. SOARES
Employment and Training Senior Trial Counsel
Legal Services   Commercial Litigation Branch
Office of the Solicitor  Civil Division
U.S. Department of Labor Department of Justice
       PO Box 480, Ben Franklin Statio
       Washington, DC  20044
       (202) 305-7405 (Telephone)

June 23, 2022   Attorneys for Defendant

56

<u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that on this 16th day of June 2022, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' COMMENTS ON THE NOTICE OF NEGATIVE DETERMINATION ON SECOND REMAND" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Antonia R. Soares</u>
Antonia R. Soares